# CONE v. IVINSON.

PLEADING—CHATTEL MORTGAGE—SALE OF PROPERTY BY MORT-
GAGOR—LIABILITY TO MORTGAGEE OF ONE INSTIGATING SUCH
SALE—CONVERSION—ELECTION OF REMEDIES.

1. A petition which states a cause of action, although in a defective manner, is not subject to attack by general demurrer; but if it state a defective cause of action it is open to such attack.

2. In an action brought by a mortgagee of sheep against one who, as alleged, with knowledge of the mortgage, fraudulently requested and instigated the mortgagors to sell and dispose of the mortgaged sheep, an allegation in the petition respecting such sale, that the mortgagors "sold and disposed of all of said sheep" construed to mean an absolute sale of the entire property in the sheep, and not the sale of the mortgagors' qualified limited property in the chattels. (Conaway, J., dissenting.)

3. An allegation in such petition that the sale was made fraudulently for the purpose of hindering, delaying and defrauding the creditors of the mortgagors, is an allegation of a substantive essential fact, and not a conclusion of law, nor a mere general allegation of fraud.

4. An absolute sale of mortgaged personal property in hostility to the mortgage lien, and in disregard of the mortgagee's rights, is a conversion for which an action will lie against the parties making the sale; and it is no defense to such an action that the mortgagee's lien was not divested by the sale, and that he could still follow the property, and subject it to the payment of the debt secured.

5. Although a mortgagor of chattels retains a vendible interest in the property, it is a limited and qualified interest, and he has no legal or moral right to sell or dispose of the property unless the sale be made expressly subject to the mortgage. A sale without such reference to the mortgage is, in itself, an absolute sale in hostility to the mortgage and in violation of the mortgagee's rights, and upon such sale the mortgagee may maintain an action against the mortgagor as for a conversion. (Conaway, J., dissenting.)

6. One, who with a fraudulent purpose, instigates and advises the mortgagor to make a sale of the mortgaged property in violation of the rights of the mortgagee, is also liable as for a conversion of the property, and an action therefor may be maintained against him by the mortgagee. (Conaway, J., dissenting.)

7. Before recovery, in such an action, from one who fraudulently procures the sale to be made in hostility to the mortgage, the mortgagee is not required to look to the personal responsibility of the mortgagor or to show his insolvency, or to follow the property. Having his remedies, he could elect to pursue any of them. (Conaway, J., dissenting.)

ON RE-HEARING.

1. A demurrer will not lie to a petition on the ground that the allegations thereof are ambiguous, uncertain and indefinite.

2. The common law rule that all pleadings are to be construed most strongly against the pleader is abrogated in this state by that provision of the code (R. S., sec. 2483), "the allegations of a pleading shall be liberally construed with a view to substantial justice between the parties."

3. An allegation in a pleading that one "instigated" another to do any act implies that the act itself was wrongful. The word is never used properly with reference to a good, virtuous lawful act.

4. The petition alleging that the sale was made without plaintiff's knowledge, it is a fair inference that it was without his consent. Further, it is well settled that the defense of leave, license or consent, is new matter which must be affirmatively pleaded.

5. The allegation of the sale, setting forth that character of sale which was a tortious conversion of the property as against the mortgagee, and it being alleged that defendant instigated the sale, it is immaterial that the defendant had not been in possession of the property.

(Conaway, J., dissenting.    Holding that in any view of the case the petition was insufficient.)

[Commenced in District Court December 19, 1889.   Decided May 19, 1893.   Re-hearing granted.   Decision on re-hearing, February 28, 1894.]

ERROR to District Court of Albany County, HON. M. C. SAUFLEY, Judge.

This case was determined upon the pleadings, the facts being fully stated by Clark, J., who delivered the opinion of the court.

*I. P. Caldwell,* and *Nellis Corthell,* for plaintiff in error.

The plaintiff's mortgage was and continued to be a lien upon the property up to the time of sale, prior and paramount to the lien of the defendant.   Upon the sale of the property these liens attached in the same order to the proceeds.   The defendant is not a subsequent mortgagee in good faith, not having parted with a present valuable consideration, but having notice of the prior mortgage.   (Jones Chat. Mort. 312, 313, 316, 318;  People's Savings Bank v. Bates, 120 U. S., 556;  Coddington v. Bay, 20 Johns., 637;  Thompson v. Van Vechten, 27 N. Y., 581;  Van Hensen v. Radcliff, 17 N. Y., 583;  Wilson v. Leslie, 20 O., 161;  Kendall v. Mason, 7 O. S., 199.)   When mortgaged property has been sold or converted into money the lien of the mortgage follows the fund and binds it in all respects as it was bound before conversion of the property.   (Wait Fraud. Conv.; 44;  Gibson v. Warden, 14 Wall., 244;  Astor v. Miller, 2 Paige, 68;  Bartlett v. Gale, ·

4 Paige, 503; Curran v. Ark., 15 How., 304; Platt v. Stewart, 13 Blatch., 500; Gimbel v. Stolte, 59 Ind., 453; Ball v. Green, 90 Ind., 76; Brown v. Stewart, 1 Md. Ch., 87; Olcutt v. Bynum, 17 Wall., 44; Markey v. Langley, 2 Otto, 142; Platt v. Bright, 31 N. J. Eq., 86; Bank v. Roberts, 44 N. Y., 192; Keel v. Levy, 24 Pac., 253; Lowe v. Wing, 13 N. W., 892; Brackett v. Harvey, 91 N. Y., 214; Rider v. Edgar, 54 Cal., 127.)

In opposition to rehearing: The allegations of a pleading must be liberally construed. (Rev. Stat., Sec. 2483; Shank v. Teeple, 33 Ia., 139.) If petition indefinite the defect is attacked by motion, not demurrer. (Pomeroy on Rem., 549.) Allegations will be construed to sustain rather than destroy cause of action. (Olcott v. Carroll, 39 N. Y., 436; I Chitty, 237; Allen v. Patterson, 7 N. Y., 480.) Although the word "procure" is not used in petition, its equivalents are used. Fraud is charged by the usual form of allegation. It makes no difference whether defendant converted the sheep or the fund. (Baker v. Beers, 6 Atl., 35; McPheetus v. Page, 22 Atl., 101.) Plaintiff had a right to elect as to remedies. (Below v. Robbins, 45 N. W., 416.)

---

### ON RE-HEARING.

The code has reversed the common law rule that a pleading must be construed most strongly against the pleader. (Maxwell Code Pl. 10, and cases cited.) A meaning should be adopted which will support the declaration. (Maxwell 11; and cases cited.) In the chattel mortgage statute the words "sell," "sale," and "dispose of," are used in the sense of an absolute transfer. (Rev. Stat., Secs. 78-90.) They have the same significance whenever employed without qualifying language. (Anderson Law Dict., 914; Benjamin on Sales, Sec. 1; Retowsky v. Watson, 71 N. C., 455; Storey on Sales, Sec. 1; Creveling v. Ward, 95 Pa., 158.) Plaintiff is entitled to the rule of construction that words shall be taken in their common and ordinary meaning. Good faith cannot be presumed

under the facts alleged in the petition. It is no defense that plaintiff might still pursue the property. (Ashmead v. Kellogg, 23 Conn., 70; Norris v. Hix, 38 N. W., 395; Merchants, etc., Bank v. Meyer, 20 S. W., 406; Liniger v. Harron, 36 N. W., 481· Jones on Chat. Mort., 710; Ashe v. Livingston, 2 Bay S. C., 80.)

*Brown & Arnold,* for defendant in error.

The lien of plaintiff's mortgage upon the chattels continued after the sale; he had the same rights after sale as before, no more, and no less. It is neither alleged that the sheep were sold to an innocent purchaser, nor that defendant interfered with plaintiff's right of possession, nor that defendant took the sheep, or asserted dominion over them, nor that the sale was in hostility to the mortgage, nor that upon sale the herd was divided among several purchasers; therefore plaintiff has no right to complain. For aught that appears the proceeds of sale were the value of the equity conceded by the pleading to be vested in defendant. The petition does not state a cause of action. (Jones Chat. Mort., 461; Goulet v. Asseler, 22 N. Y., 225; Hall v. Omaha Nat. Bank, 64 N. Y., 550; Hathaway v. Brayman, 42 N. Y., 322; Manning v. Managhan, 28 N. Y., 585.) The legal title was never in the plaintiff. (Rev. Stat., Chap. 5; Sanford v. Bell, 2 N. D., 6; Byrd v. Forbes, 3 Wash. Ty., 318; Chapman v. State, 5 Or., 432; Randall v. Higby, 37 Mich., 40; People v. Bristol, 35 Mich., 28; Campbell v. Quackenbush, 33 Mich., 287; Graham v. Blinn, 3 Wyo., 746.)

### ON RE-HEARING.

The petition cannot be viewed as alleging the sale to have been made without the knowledge or consent of plaintiff. A sale is alleged, and a sale was impossible without plaintiff's consent, under the facts alleged. The petition does not allege that defendant "procured" the sale to be made. The petition is defective in substance and not in form. The petition does

not allege a fraudulent sale. The money was paid to defendant to pay an honest debt. The question of tortious conversion is not applicable to this case. No conversion of the property is alleged. The right of plaintiff to recover possession of the personal property was barred by statute of limitations.     The mortgage was given Oct., 1884, and the sale occurred May 20, 1889. At time of sale therefore, by reason of statute of limitations (4 years) he had no right to possession. This appeared on face of the petition, and made it subject to demurrer. (Bliss on Code, Pl. 205; 1 Chitty, Pl. 225.) There is no ground for the conclusion that defendant was guilty of a wrongful conversion. To constitute a sale, there must be, first—parties competent to contract; second— mutual assent; third—a thing, the absolute or general property, which is transferred from the seller to the buyer; and, fourth—a price in money paid or promised. (Benj. on Sales, 2; Parsons on Cont., Vol. 1, Secs. 574-576.) Delivery is not requisite to a sale. (1 Parsons Cont., Secs. 529-531.) So far as can be gathered from the petition, the sale was not unlawful, or made in hostility to the prior mortgage, or without consent of plaintiff, nor does it appear that Lawrence & McGibbon are not now in the possession of the sheep sold, and holding the same in the interest of the Cone mortgage. The use of the words "sold and disposed of" in the petition indicates a transaction other than a mere sale; mortgaging property is a disposition thereof, and other acts which do not amount to an absolute unqualified sale may be a disposition. (Platt v. U. P. Ry. Co., 99 U. S., 48; Shoe Co. v. Haines, 82 Tex., 273.) A fair and unbiased construction of the allegations of the petition shows, as we believe, a simple transfer by Lawrence & McGibbon of their equitable interest in the sheep, without delivery of possession, subject to the rights of Cone, the mortgagee. This was the interest mortgaged to Ivinson, and the interest they had a perfect right to convey. Ivinson's receiving the money was an act entirely consistent with honest dealing. Even if the new rule for the construction of a pleading obtained in Wyoming, and that theory never did obtain in our courts, the petition is not thereby aided, because there is no ambiguity in

this petition and no room for construction. The new rule does not require a leaning in favor of the pleader. (Pomeroy's Remedies, Sec. 546.) A mortgagor of chattels who sells the property cannot be pursued by the mortgagee unless it is shown that the sale was made without consent. The rule is stated as follows: If it appears on the face of the statute or instrument that there is no right in the plaintiff unless he negatives the exception, he must by his declaration show that his adversary is not within it. (Encyl. of Law, Vol. 18, p. 571, and authorities there cited.) The question of consent is not matter of defense. To support an action of trover plaintiff must show right of possession in himself, the conversion of the property by the defendant when such right of possession existed. (4 Black, 317; 2 Black, 395, 465; 23 Geo., 484; 39 Me., 448; 5 Denio, 497; 31 Ill., 120; 6 Barb., 436; 27 Ala., 228.)

CLARK, JUSTICE.     (Statement of case.)

On the 19th day of December, 1889, the plaintiff in error filed his petition in the district court of Albany County, in which he alleged:

"That heretofore, to wit: on the 6th day of October, 1884, "William Lawrence and James McGibbon, then and now co-"partners as Lawrence and McGibbon, were indebted to the "plaintiff in the sum of twenty-two thousand one hundred "and seventy dollars ($22,170.00), and to secure the payment "of the said sum said Lawrence and McGibbon made their "two certain promissory notes of that date, each for the sum "of eleven thousand eighty-five dollars ($11,085.00), payable in "nine and twenty-one months, respectively, after the date "thereof, to the order of the plaintiff, with interest at ten per "cent per annum from date until paid; and at the same time, "and to further secure the payment of the said indebtedness "said Lawrence & McGibbon executed and delivered to the "plaintiff a chattel mortgage, conveying to the plaintiff twelve "thousand three hundred and ninety head (12,390) of sheep, "branded with the 'Block Y' brand, thus      , together with "the natural increase of said sheep, all of which said sheep

14

"were then ranging and pasturing at, or near, the ranches of "the said Lawrence & McGibbon, in Albany County, and the "Territory of Wyoming; also fourteen (14) head of horses, ."branded with the said 'Block Y' brand, and all harnesses, "wagons, and farm implements and tools belonging to the said "Lawrence & McGibbon, and then at or near the ranches "aforesaid, together with certain other property in said mort- "gage more particularly described, which said mortgage was "duly executed, acknowledged and delivered, and was there- ."after, to wit: on the 6th day of October, 1884, at five o'clock "p. m., duly filed for record in the office of the county clerk, ."an ex-officio register of deeds of said Albany County, and ."Territory of Wyoming, and was duly recorded in Book 'B' of "the Chattel Mortgage Records, on page 137. That said in- ."debtedness, notes, and mortgage have ever since remained, "and still remain in full force and effect and unsatisfied, ex- "cept as to four thousand head (4,000) of said sheep, which "were sold by said Lawrence & McGibbon and released from "said mortgage by the plaintiff, and the proceeds thereof ap- ."plied on plaintiff's debt, and there is still due and unpaid of "said indebtedness the sum of six thousand one hundred and "twenty-eight dollars and nineteen cents ($6,128.19), to- "gether with interest thereon at the rate of twelve per cent "per annum from the 14th day of November, 1888.

"Plaintiff further alleges that after the execution of the "said mortgage, to-wit: on the 28th day of January, 1887, "said defendant Edward Ivinson, to secure a pretended ante- "cedent indebtedness of the said Lawrence & McGibbon to "him in the sum of twenty thousand dollars ($20,000.00), pro- "cured from the said Lawrence & McGibbon a chattel mort- "gage upon seven thousand one hundred (7,100) head of the "sheep conveyed by plaintiff's mortgage above described, be- "ing all of said sheep then remaining unsold; and that there- "after, to-wit: on the 22d day of August, 1888, said defend- "ant Ivinson procured the execution by said Lawrence & Mc- "Gibbon of a certain other chattel mortgage, conveying, with "other property, to him all the property described in the afore- "said mortgage to plaintiff, except the four thousand (4,000)

"head of sheep theretofore sold by said Lawrence & McGibbon "as aforesaid, securing the payment of said indebtedness of "the said Lawrence & McGibbon to said Ivinson.    That said "Ivinson caused his said mortgages to be recorded in the office "of the county clerk, an ex-officio register of deeds of said Al-"bany County and Territory aforesaid.

"Plaintiff further alleges that thereafter, to wit: on the "20th day of May, 1889, said Lawrence & McGibbon, at the "request and instigation of said Ivinson, sold and disposed of "all of said sheep theretofore unsold, for a large sum of money, "to wit: about the sum of twenty thousand dollars ($20,-"000.00), and that said Ivinson collected and retained the "proceeds of said sale, to wit: the said sum of twenty thou-"sand dollars ($20,000.00).

"Plaintiff further alleges that said defendant, at and before "the time when he obtained from said Lawrence & McGibbon "the first of his said mortgages, and at and before the time "when he obtained from them the second of his said mort-"gages, and at and before the time when he collected and re-"tained the proceeds of said sale as aforesaid, and at all times "since the execution of the said mortgage to plaintiff, had full "notice and knowledge of plaintiff's claim, and of the exist-"ence of said indebtedness, and of the giving of said mortgage, "and of the fact that the same constituted and was a lien and "incumbrance upon the sheep aforesaid, and that the defend-"ant procured each of his said mortgages, and collected and "retained the proceeds of said sale, without other consider-"ation than the said antecedent indebtedness and with full "knowledge of the plaintiff's rights, and fraudulently for the "purpose of hindering, delaying and defrauding the cred-"itors of the said Lawrence & McGibbon, and especially this "plaintiff, of their just debts.

"That the plaintiff had no knowledge of the said fraud and "fraudulent acts of the said defendant, and did not discover "the same until long after the sale and disposal of the said "mortgaged property, and that such facts have only recently, "and long since the sale of said mortgaged property, come to "his knowledge.

"Plaintiff further alleges that said Lawrence & McGibbon,
"after the giving of said mortgages to defendant had no
"other property out of which the plaintiff could recover his
"debt, and that by reason of the aforesaid fraudulent acts
"of said defendant plaintiff has been unable to and is still
"unable to collect his said indebtedness from the said Law-
"rence & McGibbon.

"Plaintiff further alleges that he has duly demanded from
"said Edward Ivinson the said sum of six thousand one hun-
"dred and twenty-eight dollars and nineteen cents ($6,-
"128.19), and interest thereon at the rate of twelve per cent
"per annum, and that to pay said sum, or any part thereof,
"said defendant wholly failed and refused."

Thereafter the defendant in error filed in said court a
general demurrer to plaintiff's petition, for that it did not
state facts sufficient to constitute a cause of action in favor of
plaintiff and against defendant.

On April 9th, 1890, the matter was heard by the court upon
the petition and demurrer, and the demurrer sustained, and
the plaintiff failing to ask leave to amend his petition, it was
ordered and adjudged that the petition be dismissed and that
defendant have judgment against plaintiff for his costs, to
which ruling, order and judgment plaintiff duly excepted, and
now brings the case here upon such exceptions.

---

### OPINION OF COURT.

Inasmuch as there is no averment in the petition that the
defendant ever at any time attempted to foreclose either of
the two mortgages executed to him by the mortgagors, or ever
at any time asserted any right under those mortgages, or either
of them; the allegations in the petition concerning the making
of the two mortgages by Lawrence & McGibbon to the de-
fendant Edward Ivinson may be dismissed from further con-
sideration; those allegations, in my opinion, in no way what-
ever affect or qualify the remaining allegations of the petition,
unless it be that it appears from these allegations that Ed-
ward Ivinson was a creditor of the mortgagors in the sum of

twenty thousand dollars. Hence, all argument based upon propositions relating to the rights of a junior mortgagee are irrelevant to any issue in this case, as no such question is presented by this petition.

Briefly stated, the substantial facts set forth in the petition are: That on the 20th day of May, 1889, the plaintiff held a chattel mortgage upon a flock of sheep belonging to Lawrence & McGibbon to secure the payment of a balance due to him from them, amounting to the sum of $6,128.19, with interest from November 14, 1888, at the rate of twelve per cent per year; that on said day the said chattel mortgage was in full force and effect and constituted a valid subsisting lien upon said sheep; that on said day the defendant, Edward Ivinson, with full knowledge of plaintiff's rights, of the existence of said indebtedness and of said mortgage, and fraudulently for the purpose of hindering, delaying and defrauding the creditors of said Lawrence & McGibbon, and especially this plaintiff, of their just debts, and without the knowledge or consent of plaintiff, requested, instigated and procured the said Lawrence & McGibbon to sell and dispose of all of said sheep for the sum of twenty thousand dollars, which sum he, Ivinson, collected and retained; that Lawrence & McGibbon had no other property than the mortgaged property out of which plaintiff could recover his debt, and that by reason of the sale so made plaintiff has been unable to and still is unable to collect his said indebtedness from said Lawrence & McGibbon; that plaintiff has demanded the sum due him from Lawrence & McGibbon of defendant and defendant has wholly failed to pay the same or any part thereof.

Do these facts entitle plaintiff to relief? I am clearly of the opinion that they do, and that the demurrer should have been overruled and defendant required to answer the petition.

Let it be admitted that the petition sets forth in a defective manner the plaintiff's cause of action; that it is lacking in certainty and definiteness; still there is a vast distinction between stating a cause of action in a defective manner and stating a defective cause of action. In the one case the petition is not subject to attack by general demurrer; in the

other it is open to such attack because it matters not how well pleaded the defective cause of action may be, such cause cannot entitle a party to any relief.

Our code provides that "The allegations of a pleading "shall be liberally construed with a view to substantial justice "between the parties." Rev. Stat., Sec. 2483.

In Pomeroy's Remedies and Remedial Rights, at Sec. 549, the rule is stated as follows:

"The true doctrine to be gathered from all the cases is, that "if the substantial facts which constitute a cause of action "are stated in a complaint or petition, or can be inferred by "reasonable intendment from the matters which are set forth, "although the allegations of these facts are imperfect, incom-"plete, and defective, such insufficiency pertaining, how-"ever, to the form rather than to the substance, the proper "mode of correction is not by demurrer, nor by excluding evi-"dence at the trial, but by a motion before the trial to make "the averments more definite and certain by amendment."

Counsel for defendant in error in their brief use this language:

"It is not alleged that the property was sold in hostility to "plaintiff's right. Certainly in the absence of averment, it "will not be presumed that Lawrence & McGibbon commit-"ted a crime by selling the property for its full value in dis-"regard of plaintiff's rights. For aught that appears the sale "was a legal one, subject to the prior mortgage, and the pro-"ceeds of the sale were the value of the equity conceded by the "pleading to be vested in the defendant by virtue of his subse-"quent mortgage. What right then has the plaintiff to com-"plain. His general allegation of fraud will not help him "when the facts alleged show good faith."

It is true that if we consider only the allegation of the sale, viz.:

"That on the 20th day of May, 1889, said Lawrence & Mc-"Gibbon, at the request and instigation of said Ivinson, sold "and disposed of all of said sheep theretofore unsold for a "large sum of money, to wit: about the sum of twenty thou-"sand dollars, and that said Ivinson collected and retained the

"proceeds of said sale, to wit: the said sum of twenty thou-
"sand dollars."

It might possibly be open to the construction which coun-
sel gives to it, but even then I think it would be a strained con-
struction to hold that the allegation that the mortgagors "sold
and disposed of all of said sheep," meant, or might fairly be
construed to mean that they sold only their equity in the
sheep.

It may be true that a mortgagor of personal property con-
tinues to possess an interest in the property which he may
sell and transfer, or to state it otherwise, he may sell and
dispose of the property expressly, subject to the incumbrance
(but upon this proposition I express no opinion at present be-
cause of the stringent provisions of Sec. 90, Revised Statutes),
but this is certainly the only right which he possesses, the
right to sell his limited qualified property in the chattels,
and good faith and good conscience towards both the mort-
gagee and the purchaser demands of him that in making the
sale of mortgaged chattels during the existence of the lien, he
shall make it expressly subject to the mortgage; otherwise he
would be guilty of perpetrating a fraud upon either the mort-
gagee or the purchaser. This being true, how can it be
claimed that an allegation that during the existence of the
mortgage lien—the mortgagor "sold and disposed of all of
said mortgaged chattels," can fairly be construed to mean that
the mortgagor sold and disposed of only his qualified limited
property in the chattels; or that he sold and disposed of them
expressly subject to the incumbrance. The usual and ordin-
ary definition of the word "sale" is "the transfer of the abso-
lute or general property in a thing for a price in money."
Benjamin on Sales, Sec. 1. And I can conceive of no reason
why in the absence of any words limiting the meaning; the
words "sold and disposed of all of said sheep," should be
construed to mean anything less than an absolute sale of the
entire property in said sheep. Suppose the purchaser was
here complaining in an action upon the implied warranty of
title, and the proof simply showed a sale generally by the
mortgagor while in possession, without any reference whatever

to the mortgage by any of the parties, nothing at all said about it; could it in such case be said that such proof did not establish an implied warranty because it did not expressly negative the idea that the sale might have been made subject to the mortgage. It seems to me that in such case the court would say that fact was matter of defense; and certainly in such case the pleading need not be any broader than the proof required to meet the legal proposition upon which plaintiff's rights depended. Tiedeman on Sales, Sec. 185.

But taking all the allegations concerning the sale into consideration, the sale itself, the intent and purpose with which it was procured to be made, the fact that it was made without the knowledge or consent of the plaintiff, and applying to them the rule quoted from Pomeroy, how can it be said that it does not appear by fair and reasonable inference from the matters which are set forth in the petition that it was an absolute sale, which was in hostility to plaintiff's lien and in violation and utter disregard of his rights. The allegation that the sale was made "fraudulently for the purpose of hindering, "delaying and defrauding the creditors of Lawrence & Mc- "Gibbon," etc., is not an averment of a conclusion of law, nor a "mere general allegation of fraud," but of a substantive essential fact. How then can it be claimed under any fair and reasonable construction of these allegations that "the facts alleged show good faith." "Good faith consists in an "honest intention to abstain from taking any unconscientious "advantage of another, even though the forms or technical- "ities of law, together with an absence of all information or "belief of facts which would render the transaction uncon- "scientious." Gress v. Evans, 1st Dak., 399.

It is further claimed that inasmuch as it does not appear from any allegation in the petition that plaintiff's lien has been destroyed or in any way impaired by the fact of sale, but on the contrary that it does fairly appear that plaintiff's lien after the sale remained in full force and effect, and that for aught alleged he could have followed the property and subjected it to the payment of his debt, that he was not in-

jured by the sale and that he had after the sale the same remedies which he had before the sale, no more and no less.

I do not think this is the law. It is to my mind well settled that an absolute sale of mortgaged personal property in hostility to the mortgage lien, and in disregard of the mortgagee's rights is a conversion for which an action will lie against the parties making the sale; and it is no defense to an action for the conversion of the property to say that the mortgagee's lien was not divested by the sale, and that he can still follow the property and subject it to the payment of the debt secured by the mortgage.

In Ashmead et al. v. Kellogg, 23 Conn., 70, the facts were that the defendant made a chattel mortgage upon a schooner to the plaintiffs to secure the indebtedness of $3,000.00 from defendant to plaintiffs. After the making of the mortgage the defendant made sale of the entire interest of said vessel to one Brannon for the sum of $14,000.00, which the defendant retained to his own use. No attempt was made by the mortgagees to follow the property, and an action of trover was brought by them against the mortgagor. Upon the trial the plaintiffs had judgment and defendant appealed. The supreme court, in the opinion at page 74, say:

"On the facts appearing in this case, two points have been "presented. First, whether the plaintiffs had a sufficient "title to the property in question to maintaian the action; "and secondly, whether there was a wrongful conversion of it "by the defendant to his own use. Respecting the latter of "these questions, it is too obvious to require argument, that "if the plaintiffs had sufficient title to the property when it "was sold by the defendant, such sale constituted a wrongful "conversion of it by the latter. It was an unauthorized de-"privation of the plaintiffs of their property, and a direct ap-"propriation of it by the defendant to his own use. It is "true, as stated by the defendant, that the plaintiffs did not "by such sale lose their title to the property, and might have "reclaimed it, if they elected to do so, in the hands of the pur-"chaser from the defendant, or those into whose hands it "might afterwards come; but they were not bound to do this,

"and had a right to resort immediately to the defendant, by "whose means they had been wrongfully deprived of it. It is "scarcely necessary to say that the wrongful conversion of "property, which is sufficient to sustain the action of trover, "does not necessarily imply its destruction or even its re- "moval, so that the owner cannot retake it. If the defend- "ant had merely disposed of his own interest in the property "and sold it subject to the incumbrance of the mortgage of it "to the plaintiffs, there would have been no interference with "the rights of the plaintiffs; but here the defendant assumed "to sell the entire vessel, as unincumbered, and retained the "proceeds as his own, which was a clear invasion of the rights "of the plaintiffs, and a wrongful conversion of their prop- "erty by the defendant to his own use."

At page 78 of the report the court further says:

"The plaintiffs claim that the sale of the property by the "defendant in this instance constituted such a misappropria- "tion and conversion of the property, and we are of that opin- "ion. It could not be doubted that a destruction of it by the "defendant during the limited period during which he was "entitled to its use would be a conversion of it, for which "the plaintiffs might immediately maintain an action of "trover, and we think that a sale was equivalent to a destruc- "tion of it as between the parties. It may indeed, after such "sale, have remained in specie, but it is not for the defend- "ant to insist that the plaintiffs should follow it in the hands "of the purchaser. The plaintiffs may treat it as if it were "lost or destroyed. The sale of it, moreover, by the defend- "ant, was an act of disloyalty to the plaintiffs and a disclaimer "by him of their title."

In White v. Phelps, 12th N. H., 382, it is said:

"The general principle is, that assuming to one's self the "property and right of disposing of another man's goods, is a "conversion."

In Miller v. Allen, 10 R. I., 49, it was held:

"That a mortgagor of personal property left in possession "thereof, who again mortgages the entire property without "giving notice of the existing mortgage, and afterwards gives

"the second mortgagee possession or permits him to take pos-
"session thereof, is guilty of a tortious conversion, and is
"liable to the first mortgagee in an action of trover."

In Coles v. Clark et al., 3d Cush., 399, the facts were that
a mortgagor who was left in possession of certain mortgaged
chattels took them to the defendants who were auctioneers,
for sale. The defendants as such auctioneers sold the goods,
and paid the proceeds over to the mortgagor long before the
plaintiff, who was the mortgagee, could learn what had be-
come of the goods. At the time of the sale, and at the time
the proceeds were paid over, and for a long time thereafter,
the defendants had no knowledge of the existence of the mort-
gage.

The court below charged the jury that even though the
mortgagor might have been guilty of fraudulent conduct,
such as would make her liable to the mortgagee, yet the de-
fendants would not be liable to the mortgagee for the prop-
erty unless the jury should also be satisfied, either that the
defendants acted in concert with the mortgagor, or had knowl-
edge in fact of the existence of the mortgage, or unless there
was something in the transactions themselves, or circum-
stances had come to the defendants' knowledge, which would
put men of ordinary prudence on inquiry so that they might
have come to a knowledge of the existence of the plaintiff's
mortgage. The supreme court, in an opinion by Chief Justice
Shaw, held the above quoted instruction to be error, saying,
at page 402 of the report:

"In the decision of this case, we lay out of it all considera-
"tion of the fraudulent intent and purpose, or conduct of the
"mortgagor. Of course, if she had a fraudulent intent, and
"the defendants participated with her in that intent, that
"would put the matter beyond doubt, upon the plainest prin-
"ciples of common honesty and fair dealing. But we see
"nothing to fix such an imputation upon them and we pre-
"sume none is suggested. It is sufficient for the view we
"take of the case that the conduct of the mortgagor was
"unlawful, that she had no title in herself which she could
"transfer to another by a sale, and that she had no authority

"to transfer the title of the mortgagee. And the court are "of opinion that the sale and disposition of the goods, the "delivery of them and receiving the proceeds by order and "direction of the mortgagor, who had neither title nor power, "was a conversion, and that this action may be maintained."

If such is the law, and I know of but one case, Rogers v. Huie, 2 Cal., 571, in which the contrary has been held, do not the allegations in the petition in this case charging an actual fraudulent intent in procuring the sale, upon the defendant, set forth upon the plainest principles of common honesty and fair dealing an actionable wrong?

In the case of Spraights v. Hawley, 39 N. Y., 441, the facts were like the facts in Coles v. Clark, supra. A mortgagor deposited certain mortgaged jewelry with the defendant for sale. Defendant sent the jewelry to New York and effected a sale there; received the proceeds of sale and paid them over to the mortgagor without charge for his services. He acted simply as the agent of the mortgagor, without notice of the mortgage and in good faith. The supreme court of New York, to which the case was appealed, and the court of appeals in the report above cited, held that the defendant was liable for a tortious conversion of the property.

In Merchants & Planter's Bank et al. v. Meyer, 20 S. W. Rep't, 406, it was held that an absolute sale of mortgaged chattels made by an agent of the mortgagor in exclusion or defiance of the rights of the mortgagee is a conversion for which such agent is liable to the mortgagee, though the sale is made in good faith and without actual notice of the mortgage.

In Brown v. Campbell, 44 Kan., 237, the facts were, a chattel mortgage was properly executed and recorded and was valid. The mortgage debt was not paid although it had been due for some time, and the mortgagee never had the actual possession of the property. The wife of the mortgagor transported the property to another county and placed it in possession of a broker who sold it to others and paid over the proceeds of the sale to the consignor, the wife of the mortgagor; and all this was done without the knowledge or consent of

the mortgagee, and without any actual knowledge on the part of the broker concerning the mortgage or the rights of the mortgagee. Upon these facts it was held by the supreme court of Kansas, that as the mortgage had been properly filed and recorded, and continued to be a valid subsisting lien upon the property, the broker was charged with notice thereof and of the rights of the mortgagee, and that by selling and delivering the property to others he made himself liable to the mortgagee as for a conversion of the property. In the opinion, at page 242, the court uses this language:

"The defendant also cites Hathaway v. Brayman, 42 N. Y., "322. In this case it was decided that a mortgagor of chattels "in possession has a right before default to sell and deliver the "mortgaged property subject to the mortgage. This we "think is good law, provided the mortgagor sells the prop-"erty in good faith and without any intent to hinder, delay "or defraud his creditors, and especially the owner of the "mortgage debt. If the mortgagor, however, should sell the "mortgaged property without reference to the mortgage debt, "or with any intent to hinder, delay or defraud the holder of "the mortgage, he would commit a criminal offense."

In my judgment, the case last cited states the law correctly. While it may be true that a mortgagor of chattels still retains a vendible interest in the property, it is still a limited and qualified interest, and he has no legal or moral right to sell or dispose of the mortgaged property unless the sale be made expressly subject to the mortgage and the mortgagee's rights. A sale without reference to the mortgage is in itself an absolute sale in hostility to the mortgage, and in violation to the mortgagee's rights; and upon such sale the mortgagee may maintain an action against the mortgagor as for a conversion of the property. To hold otherwise, would in my opinion be tantamount to saying, that a mortgagor of chattels might lawfully make a sale of the mortgaged chattels, which would in effect either work a fraud upon the purchaser or upon the mortgagee; and I am of the opinion that the true rule is that he shall not lawfully be permitted to do an act which will in its effect perpetrate a fraud upon either.

For other authorities upon this branch of the case, see Howard v. Burns, 44 Kan., 543; Marks v. Robinson and Ledyard, 82 Ala., 69; Jones on Ch. Mtgs., Sec. 460, and cases cited; Lafayette Bank v. Metcalf et al., 40 Mo. App., 494; Peckinbaugh v. Quillen, 12 Neb., 587; Worthington v. Hanna, 23 Mich., 531; Longey v. Leach, 57 Vt., 377.

It is further contended on behalf of defendant in error, that:

"The petition does not allege that the defendant ever "took possession of the mortgaged property, or that the sheep "were ever sold by him. It does not allege that the proceeds "retained by the defendant was the full purchase price. Did "it contain such necessary allegations, in addition to the facts "alleged, it would still fall short of stating a cause of action."

And in support of this proposition cites the following authorities: Jones on Chattel Mortgages, Sec. 461; Goulet v. Asseler, 22 N. Y., 225; Hall v. Omaha Nat'l Bank, 64 N. Y., 550; Hathaway v. Brayman, 42 N. Y., 322; Manning v. Monaghan, 28 N. Y., 585.

It is true that the petition does not allege that the defendant ever took possession of the sheep or that he sold them, but it does allege that the defendant with a fraudulent purpose instigated and advised the mortgagor to sell the sheep, and as we have before stated, the sale by the mortgagors was in effect a conversion of the property; and that not only by them, but by the defendant who procured them to make the sale. Cooley on Torts, 127 and 131, and the plaintiff could rightfully sue any or all of those who participated in the sale. Peckinbaugh v. Quillen, 12 Neb., 587.

I think it does fairly appear from the petition that the proceeds of the sale collected and retained by the defendant was the full purchase price of the sheep; the sale being, according to my construction of the allegations concerning it, an absolute sale of the entire property in said sheep, and not simply a sale of the mortgagor's limited and qualified property right in them.

As to the cases cited by defendant in error, it will appear from examination that the cases of Goulet v. Asseler, supra,

and Manning v. Monaghan, supra, were decided upon the authority of Hull v. Carnley, 11th N. Y., 501, which case was the second time before the New York court of appeals, and reported also in 17th N. Y., at page 202. In all three of these cases the facts were substantially alike—and as follows: Before default in the condition of the mortgage and while the mortgagor was in possession of the mortgaged property under an express provision thereof which entitled him to the possession until default, the mortgaged property was seized under execution against the mortgagor, and the interest of the mortgagor therein sold. And it was held under such circumstances that this could lawfully be done, and that the officer making the seizure and sale was not liable to the mortgagee, although he sold the property generally without in any way recognizing the lien of the mortgagee. This upon the ground that in an action for the conversion of property the plaintiff to recover must show not only a property in the thing converted but as well possession or the right of possession at the time of the conversion, and upon the further ground that upon execution sale, only the interest of the debtor is ever attempted to be sold, and the doctrine of caveat emptor applies in the strongest manner to purchasers at such sales. But it is only when the mortgagor has a certain ascertained right of possession for a definite period that an execution can be levied upon his interest. Jones on Chattel Mortgages, 556; Peckinbaugh v. Quillen, 12 Neb., 586.

Hence it does not seem to me that the New York cases cited in any manner conflict with the views hereinbefore expressed, unless it be that portion of the decisions which hold that the officer's liability is not affected by the fact that he sold the property generally and without regard to the mortgage. As to this particular matter I must confess that notwithstanding my very high respect for the very able court rendering these decision I am more impressed with the reasoning of Edwards, J., in the dissenting opinion in Hull v. Carnley, 11 N. Y., 510, than I am with the reasoning in the opinion of the majority.

But however this may be, the facts in the cases referred to,

and the case now before this court, are not alike. In this case default had occurred; the debt was due and unpaid, and such being the case the plaintiff at the time of the sale was and had been for a long time entitled to the possession of the sheep.

If in objection to this statement it should be said that the petition does not set forth any of the conditions of the mortgage further than that it was to secure the debt due the plaintiff, and that no other conditions can be presumed, the objection might be admitted as valid. The conclusion would be the same; because if there was no provision in the mortgage which authorized the mortgagor to retain possession of the sheep until default, then it follows that the mortgagee was entitled to the possession of the sheep immediately upon the execution of the mortgage. Jones on Chattel Mortgages, Sec. 426, and cases cited.

In the case of Hathaway v. Brayman, 42 N. Y., 322, the mortgagor sold the mortgaged horse subject to the mortgage while in possession under the terms of the mortgage; his vendee sold to another, before default, and while in possession of the last purchaser the horse died. There was no fact in the case indicating a sale in hostility to the mortgage and hence this case does not conflict with any opinion herein expressed.

Hall v. Omaha Nat'l Bank, 64 N. Y., 550, was not a case in which a mortgagee's rights were involved. The plaintiff had a mere equitable lien upon the property, and nothing more. He could not even upon default have taken possession of the property. All that he could do would have been by some appropriate judicial proceeding to have subjected the property to the satisfaction of his demand. The defendants were mortgagees who after default in a replevin suit, recovered possession of the goods from the mortgagors, and under the power contained in the mortgage sold the property. The court expressly found that only the mortgagor's right in the property was sold; it was not shown that the purchaser had or had not notice of the plaintiff's lien. In fact no attempt was made to show that the sale was in hostility to plain-

tiff's lien. And the court held defendants not liable to plaintiff.

This case was previously before the court upon demurrer to plaintiff's petition, and is reported in 49 N. Y., 626. The second count in the petition was very general in its allegations, not setting them forth so specifically and directly as does the petition in this case, and the court held that the action of the court in sustaining the demurrer was erroneous and reversed the case. And, hence, I can see nothing in this case which conflicts with the views hereinbefore expressed; but on the whole the opinion of the court upon the exceptions to the order sustaining the demurrer (49 N. Y., 626) strengthens me in the belief that the facts stated in the petition in this case do set forth a cause of action.

It is further, on behalf of defendant in error, urged that inasmuch as the mortgage was under our statute a mere lien upon the mortgaged property, that there was no estate or title in the mortgagee which could be converted. The proposition is stated as follows:

"The legal title to the property was never in the plain-"tiff; under our law a chattel mortgage is a mere security "under which no title can pass except by foreclosure. After "condition broken, as well as before, the mortgagor was the "absolute legal and equitable owner of the sheep in question, "and as such had a vendible interest which he could rightfully "sell and deliver to the purchaser, subject of course to the lien "of the mortgage. Under similar statutes in other States, "prescribing a statutory mode of foreclosure it is held that "the old theory of the common law no longer obtains, and that "both before and after default the legal estate and a vendible "interest remains in the mortgagor."

And in support of this proposition we are cited to cases from Oregon, Washington, North Dakota and Michigan.

In the cases cited, including two early Oregon cases, it is held that a chattel mortgage is a mere lien and conveys no title to the mortgagee until foreclosure, but the great weight of authority is the other way. Without further enlarging upon the matter I will content myself by referring to Case T.

15

M. Co. v. Campbell, 14 Ore., 460, in which the cases from
that State cited by defendant are overruled. In the opinion
the court speaking by Thayer, J., concerning the mortgagee's
right after default, say:

"The mortgagee then has a right to the thing, and may,
"if a delivery of it to him on demand is refused, maintain an
"action in the nature of replevin to recover it. Having a
"claim upon the property, a right to its possession, coupled
"with the right to have it sold to satisfy his claim, is, it seems
"to me, more than a lien; it is a qualified ownership. Pos-
"session is property when it includes so important a right.
"The right of possession is a species of title. It is a dominion
"over the thing; not for all purposes, perhaps, but for a sub-
"stantial advantage to the party. He may obtain control over
"it as a right, and hold it as against every one until the mort-
"gagor performs the conditions of the mortgage..

* * * * *

"Conceding that he has a special property in the thing
"mortgaged, after the conditions of the mortgage are broken,
"concedes to him the right to recover for its unauthorized
"conversion. If, therefore, the appellant wrongfully disposed
"of the property in question he was liable in 'damages."

In my judgment the law is correctly stated in the above
quotation.

In considering this case I have investigated it along the line
of reasoning followed by counsel for the defendant in error
for the reason that in this argument they were thorough and
forcible, and stated every proposition and cited every author-
ity which could be stated or cited to uphold the order of the
court below.

The conclusion to which I have arrived is, that plaintiff's
petition does set forth facts sufficient to constitute a cause
of action against the defendant. All forms of actions having
been abolished by our code of civil procedure, no question
can arise in this case as at common law as to whether an action
of trover, trespass, case, or for money had and received was
the proper remedy. It is sufficient that it fairly appears that

the defendant is guilty of a wrongful conversion of plaintiff's
property. That by means and as the result of such conversion
defendant obtained a sum of money largely in excess of plain-
tiff's debt; that the measure of plaintiff's recovery is the
amount of his debt secured by the mortgage, and this amount
the defendant ought in equity and good conscience to pay over
to the plaintiff. Before recovering from defendant, plaintiff
was not required to look to the personal responsibility of
Lawrence & McGibbon, or to show their insolvency, or to fol-
low the sheep. Having his remedies, he could elect to pursue
any of them. Merchants & Planter's Bank v. Meyer, 20 S.
W., 408, and cases cited therein.

The judgment of the district court of Albany County is
reversed and the cause remanded to that court for further pro-
ceedings in accordance with the views herein expressed.

GROESBECK, C. J., concurs.


CONAWAY, JUSTICE, dissenting.

I cannot concur in the conclusion of the court in this case.
The petition is in the nature of a bill in chancery brought
by plaintiff in error for enforcement of the lien of a mortgage
upon personal property, which property had been sold by the
mortgagors, not against the property in the hands of the pur-
chaser, nor against the proceeds of the sale in transitu or in
the hands of the mortgagors, but against the proceeds in the
hands of defendant in error to whom they had been paid in
discharge of an antecedent indebtedness of the mortgagors to
him. The court being unanimously of the opinion that the
lien of the mortgage does not follow the proceeds under the
facts alleged, the petition is not now considered as a plead-
ing seeking equitable relief, but as a declaration at law in the
nature of trover, trespass, case, or for money had and received,
or something of that kind. I am not objecting to this way of
considering it. If the petition states a cause of action of any
nature the demurrer should have been overruled. . .

I concur in the view of the court as expressed in the opinion.

of Clark, J., that in order to constitute a cause of action the sale of the property must have been made in hostility to the mortgage lien. I do not understand this to be alleged in the petition. The allegation is that the mortgagors sold all of the sheep. This is a common form of statement of a sale of mortgaged property by the mortgagor when he sells subject to the mortgage. It is not an allegation or equivalent to an allegation that he sells in hostility to the mortgage. It furnishes no information as to whether the sale was in hostility to the interests of the mortgagee or not. It is to be presumed it was not, for the contrary would be to presume a fraud or a crime, or both.

If plaintiff in error were charged with the crimen falsi, either in law or morals, in that he alleges that the mortgagors sold all of the sheep, whereas, in truth and in fact, they did not, but sold only their own interest, and sold subject to a mortgage of plaintiff in error, the insufficiency of the allegation would be abundantly apparent. Some indignation would be excusable in plaintiff in error, as he would retort: "What are you talking about? When I state that certain persons sold a property will you infer that I state farther that they sold some other person's property or interest besides their own, or unlawfully or criminally interfered with such interest, and accuse me of falsehood by inference? I said that the mortgagors sold all of the sheep, which is strictly true. They did sell and deliver every one of them. You say they sold the sheep subject to a mortgage of plaintiff in error. I never said anything to the contrary."

But it is to be remembered that the allegation in this case is that the mortgage was in full force and effect. A chattel mortgage under our law is kept in full force and effect by record in the first instance, and by proper renewals of the record by affidavit after the expiration of a certain time. When these fail the mortgage ceases to be valid as to creditors and subsequent purchasers and mortgagees in good faith and for a valuable consideration. It was urged in the oral argument by counsel for plaintiff in error that the sale might have been made to one who purchased in good faith and for

a valuable consideration, and so to the destruction of the mortgage lien. This is not possible while the mortgage is in full force and effect. The record notice implied in this statement effectually disposes of all questions of good or bad faith. It is inconsistent with good faith in any one attempting to purchase or to deal with the mortgaged property in any way in hostility to the interests of the mortgagee. It dispenses with the necessity of the mortgagors expressly mentioning the mortgage as an exercise of good faith. All parties dealing with the mortgaged property do so with continual notice of the existence of the mortgage and of its terms. And this constructive notice of the record is of the same legal effect as though the mortgagors in connection with every proposition and remark they made in effecting the sale had continually repeated: "This property is encumbered to the amount of $6,128.19, by a mortgage in full force and effect in favor of Joseph S. Cone." No actual mention of the mortgage was necessary in making the sale. The record was doing that continuously as to all parties to the transaction and everybody else. The sale could have been made in hostility to the mortgage only by some express understanding or agreement by the parties, or some of them, to do something in addition to the selling of the property on the one part and the purchase of it on the other; as to deny the rights of the mortgagee, or to resist him in enforcing them, or to sell the property to be consumed, or scattered, or removed to a distance, or something equivalent. Nothing of this kind is alleged. The cases cited by the court are not inconsistent with this view, but in the main sustain it. Neither can such allegation of something done be inferred from any allegation of intent. An act is one thing. An intent is another thing of an entirely different nature. An intent cannot be equivalent to an act, though it may be an important element in a cause of action in addition to the requisite acts. Neither is the wanting allegation to be inferred from the further allegation that no property was left to which plaintiff in error could resort for the collection of his debt. No withdrawal or removal of such property being al-

leged, the allegation that none was left is not pertinent or material.

I am of the opinion that the judgment of the district court sustaining the demurrer should be affirmed.

---

. ON REHEARING.

CLARK, JUSTICE.

This cause was decided by this court on the 19th day of May, 1893. Thereafter, upon application of defendant in error, a rehearing was granted by this court, and the cause has been fully re-argued. Appended to the former opinion is a statement of the facts in which is set forth in haec verba the petition filed in the court below by plaintiff in error, to which a general demurrer was sustained.

In view of the evident earnestness with which counsel for defendant in error have with great courtesy urged upon this court their contention that the court erred in its former decision we have carefully re-examined the entire question. Without undertaking to follow the language of the petition, the substantial facts alleged are as follows:

On October 6, 1884, Lawrence & McGibbon were indebted to plaintiff in the sum of $22,170.00, evidenced by their two promissory notes of that date for $11,085.00 each, one thereof being payable in nine months and the other in twenty-one months after said date, and each bearing interest, on which notes there is still due and owing and unpaid the sum of $6,128.19, with interest from November 14, 1888. On the date of said notes to secure the payment thereof the makers executed and delivered to plaintiff a chattel mortgage conveying to him a large flock of sheep and other personal property; the mortgage was duly recorded, and except as to 4,000 of the sheep, which were sold by Lawrence & McGibbon and released from the operation of the mortgage by plaintiff, it continued to be and was in full force and effect at the time of

the commencement of this action, to wit:   December 19, 1889.

On the 28th day of January, 1887, the defendant Edward Ivinson to secure what is alleged to be a pretended antecedent indebtedness to him from Lawrence & McGibbon of $20,-000.00 procured a mortgage from them upon 7,100 head of the sheep mortgaged to plaintiff, being all of the said sheep then remaining unsold; and thereafter, on the 22d day of August, 1888, he procured from them a certain other chattel mortgage upon all of the property mortgaged to plaintiff excepting only the 4,000 head of sheep which had been sold, both of which mortgages were duly recorded.   Thereafter, and now we quote from the language of the petition:   "On "the 20th day of May, 1889, said Lawrence & McGibbon at "the request and instigation of said Ivinson, sold and disposed "of all of said sheep theretofore unsold for a large sum of "money, to wit:  about the sum of twenty thousand dollars "($20,000:00), and that said Ivinson collected and retained "the proceeds of said sale, to wit:  the said sum of twenty "thousand dollars."   It is further alleged that at and before the time of the occurrence of all the matters above stated, and at all times since plaintiff procured his said mortgage, the defendant had full notice and knowledge of plaintiff's claim, of the existence of the indebtedness to him, of the execution of his mortgage and of the fact that the same constituted a lien upon said sheep; and that he, the defendant, procured each of his said mortgages and collected and retained the proceeds of the sale of said sheep without other consideration than said antecedent indebtedness "and with full knowledge of plaintiff's rights, and fraudulently for the purpose of hindering, delaying and defrauding the creditors of the said Lawrence & McGibbon, and especially this plaintiff of their just debts."   "That plaintiff had no knowledge of the said fraud and fraudulent acts of the said defendant, and did not discover the same until long after the sale and disposal of the mortgaged property," and that such facts have only recently and since said sale come to his knowledge.   It is further alleged that Lawrence & McGibbon after giving the

mortgages to defendant had no other property out of which plaintiff could recover his debt, and that by reason of the said fraudulent acts of defendant he has been unable to and still is unable to collect his said debt. Demand upon defendant for the amount of plaintiff's debt and refusal thereof is also alleged.

The principal point in this controversy centers in the allegation which is above stated in full, concerning the sale on May 20, 1889, by Lawrence & McGibbon of the mortgaged sheep. It is admitted by counsel for defendant in error in his replying brief filed herein that "if the allegation of the "petition as to the sale when standing alone describes an il- "legal sale or a sale made in hostility to the mortgage of Cone, "then it may be said that the petition states a cause of action, "it being understood that every other material allegation in "the petition is a mere off-shoot of this central proposition." This is not an entirely fair and correct statement of the real question in controversy; we have no right in examining a pleading challenged as setting forth facts not sufficient to constitute a cause of action, to select out from the body of the pleading a separate allegation and examine it without reference to other allegations stated. Should such a rule as this prevail it would be practically impossible for any pleader to draw a sufficient petition because it would be impossible to set forth a sufficient cause of action in a single allegation or in a single sentence. The whole petition must be looked at, and the allegation of the sale viewed in the light of all the other facts stated in the petition, so far as they throw any light upon that allegation. And the real question in the case is this: "if "the allegation concerning the sale of the sheep when viewed "in the light of the other facts stated in the petition which "characterizes it, describes an illegal sale, or a sale made in hostility to plaintiff's mortgage, and the defendant participated in that sale and received the proceeds thereof, then the petition stated a cause of action and defendant should answer. It clearly appears that at the time of the sale there was resting upon the sheep sold a valid subsisting mortgage in favor of plaintiff of which defendant had full knowledge; under

such circumstances the mortgagors "at the request and instigation of defendant" sold and disposed of all of said sheep, and the defendant collected and retained the proceeds of said sale 'fraudulently and with intent to hinder, delay and defraud the creditors of said mortgagors and particularly this plaintiff. Now then, assuming for the moment what the writer hereof held in the former opinion, and which is so earnestly controverted here, that under the rule that words in a pleading will usually be construed in their popular and ordinary sense, the words "sold and disposed of all of said sheep" must be construed to mean that the sale was an absolute sale of the entire property in the sheep, as distinguished from a sale of the qualified limited title, estate and property which the mortgagors possessed. If such is the proper construction of the words used then there can be no question but that it was a sale in hostility to plaintiff's mortgage, a sale which was wholly illegal, unless it was made with the mortgagee's consent, and it needed in the petition no adjectives to explain or characterize it, the facts themselves characterized and stamped it as fraudulent and illegal, and this proposition, we think, is fully sustained by the authorities cited in the former opinion, to which we content ourselves by simply referring. A sale of another's property without his knowledge or consent is necessarily wrongful.

But it is urged upon us that the allegation with reference to the sale may be fairly construed to mean that the mortgagors sold and disposed of simply their qualified, limited property in the sheep, or in other words, that they sold the sheep subject to the mortgage of plaintiff and made no attempt to do anything more, and several reasons to which we will hereafter refer are urged upon us to sustain this contention. Let us admit for the purposes of the argument only, that this is so. What is the legal result? In what shape is the pleading? It cannot be denied that the allegation may also just as fairly be construed to mean that it was what we have called an absolute sale of the general property in the sheep, and that being so, what is the conclusion? Can it be other than that the pleading in its allegations with respect to the sale, "is so

"indefinite and uncertain that the precise nature of the charge
"is not apparent," to quote the language of our code, Rev.
Stat. Wyo., Sec. 2475? I can see no escape from this conclu-
sion, and reaching this conclusion the question naturally
arises what was the defendant's remedy under such a state of
facts? The code, Sec. 2475, Rev. Stat., provides that it may
be summarily ordered amended by the court upon motion. It
may not be and cannot be reached by demurrer. It is well
settled, too well settled to need the citation of authorities,
that a demurrer will lie only for the causes mentioned in the
code, and the fact that a petition in its allegations is am-
biguous, uncertain and indefinite is not one of those causes.
In the case of the Trustees v. Odlin, 8 Ohio St., 293, Judge
Swan, who stands deservedly high as an authority upon code
practice, in delivering the opinion of the court, uses this
language:

"We suppose the common law rule as to the construction of
"pleadings under the code to be entirely abrogated. If plead-
"ings shall be in ordinary language as contradistinguished
"from legal technical language, they must be construed as
"meaning what is generally understood by ordinary language
"and hence there can be no established technical mode of stat-
"ing a cause of action or defense. So too the rules of the com-
"mon law, as to the sufficiency of pleadings, are abrogated
"and in their place is substituted the few and simple rules of
"the Code. Whatever rules of common law pleading are in
"accordance with the rules of the Code they are still applicable
"to pleadings under the Code, not however as common law
"rules but as rules of the Code. Thus the rules of common
"law pleading which illustrate and vindicate the law that
"the facts which constitute a cause of action shall be set forth
"in the declaration may be applicable to a petition under the
"Code. But the language to be used in stating a cause of
"action is prescribed by the Code and the common law rules
"in that respect are entirely inapplicable. If what under
"common law pleadings was denominated a legal deduction or
"conclusion of law, is alleged, it may or may not contain also
"a fact constituting a cause of action or defense, but if it does

"and is indefinite and uncertain the opposite party may by
"motion require it to be made definite by motion (amend-
"ment).  He cannot demur as at common law, nor object to
"the pleading on error."

Mr. Bliss, in his work on Code Pleading, Sec. 314, uses this
language:

"The vice then of ambiguity is not fatal on general de-
"murrer or error unless the obscurity is such that no cause of
"action, or no defense, can be made out by a liberal construc-
"tion in furtherance of the object of the pleader: but still, it
"is a vice going to the form of the statement, which will be
"corrected on motion, and at the pleader's costs."  See also
Bliss on Code Pleading, Sec. 425; Pomeroy on Remedies, Sec.
548, et seq.; Swan's Pleadings & Precedents, 164-165 and 166;
Maxwell on Code Pleading, Pages 11 and 18; People v. Ryder,
12 N. Y., 434; Chambers v. Hoover, 3 Wash. Ter., 107, at 110.

In the case last cited the court uses this language:

"The averments of the petition are vague and indefinite and
"it is defective in other respects; yet when bolstered by the
"rule of liberal construction commanded by the Code we think
"we discern a cause of action.  A suitor is no longer to be
"turned out of court, if by making all reasonable intendments
"in his favor enough can be seized hold of in his pleadings to
"show that he has rights which ought to be enforced.  He
"may be required on motion to conform his statement to the
"rules of good pleading, and if he refuse may be turned out
"of court; but as against a demurrer, the office of which is
"to raise a substantial issue on the law of the case, and not on
"the law of practice and pleading, evidentiary facts, and even
"inferences from averments amounting to mere conclusions of
"law, will be considered in his favor."

Counsel for defendant urged their contention as to the
proper construction of the allegation of sale and assign two
principal reasons for the faith that is in them.

First:  That it is fundamental that all pleadings are to be
construed most strongly against the pleader, and

Second:  That good faith in business transactions is a set-
tled presumption of the law, and hence it follows that bearing

in mind the latter rule and giving force to the former, the court will be bound to construe the allegations of sale in such way as to let it import a valid, lawful sale of the mortgagor's qualified interest in the sheep, and they say in their brief, "How can the court assume bad faith when none is made to "apppear by allegation. We cannot believe this court capable "of maintaining so monstrous a proposition when their atten- "tion is called fairly to it." We will consider these two prop- ositions in the order stated above. Is it a fundamental propo- sition of law that all pleadings will be construed most strongly against the pleader? If so, then what becomes of Sec. 2483 R. S. Wyo., which reads "the allegations of a pleading shall "be liberally construed with a view to substantial justice be- "tween the parties." By what process of reasoning is it pos- sible to make the two rules stand together. How can they be harmonized? Is there any doubt but that they are just as much opposed to each other as two rules relating to the same matter could possibly be? One is a common law rule, the other a valid enactment of the lawfully appointed law making body of this State. And such being the case, which of these rules is it the duty of this court, acting under the sanction of their oaths, to obey, the common law rule which has been absolutely abrogated by the Code, as stated by Justice Swan in the case of Trustees, etc., v. Odlin, supra, or the rule en- acted by the legislature of this State in pursuance of the power conferred upon it by our fundamental laws? It seems to me that it needs no argument or citation of authority to show that the code provision is the one that must control, and that the common law rule as contended for by counsel has no sort of place in the law of this State. But authority upon the subject is not lacking. In Pomeroy's Remedies and Remedial Rights, at Sec. 546, the author in discussing this identical question, says:

"This harsh doctrine, unnecessary and illogical in its origi- "nal conception and often pushed to extremes that were simply "absurd, was the origin of the technicality and excessive pre- "cision which, more than any other features characterized the "ancient system in its condition of highest development. All

"the codes contain the following provision, or one substan-
"tially the same. 'In the construction of a pleading, for the
" 'purpose of determining its effect, its allegations shall be
" 'liberally construed with a view to substantial justice be-
" 'tween the parties.' The evident intent of the legislature in
"this clause was to abrogate at one blow the ancient dogma,
"and to introduce in its place the contrary principle of a
"liberal and equitable construction; that is a construction in
"accordance with the general nature and design of the plead-
"ing as a whole. This mode of interpretation does not require
"a leaning in favor of the pleader in place of the former
"tendency against him: it demands a natural spirit of fairness
"and equity in ascertaining the meaning of any particular
"averment or group of averments from their relation and con-
"nection with the entire pleading and from its general pur-
"pose and object. The courts have uniformly adopted this
"view of the provision; and although in particular instances
"they may sometimes have departed from it, yet, in their an-
"nouncement of the theory, they have unanimously conceded
"that the stern doctrine of the common law has been abol-
"ished, and that instead thereof an equitable mode of con-
"struction has been substituted?"

See also Sec. 547.

At Sec. 314 of Bliss on Code Pleading, it is said:

"Pleadings should not be ambiguous or equivocal. In con-
"struing such pleadings it was once said that when two dif-
"ferent meanings present themselves, that construction shall
"be adopted which is most unfavorable to the party pleading.
"This rule, however, had come to be so modified as to hardly
"leave it the force of a rule. Thus, says Mr. Chitty, 'The
" 'maxim must be received with this qualification: that the
" 'language of the pleader is to have a reasonable intendment
" 'and construction: and when an expression is capable of
" 'two different meanings it does not appear to clash with any
" 'rule of construction applied even to criminal proceedings,
" 'to construe it in that sense in which the party making the
" 'charge used it, if he intended that his charge should be
" 'consistent with itself.' The general requirement found in

"the statutes of all States which have adopted the system,
"that 'in the construction of a pleading for the purpose of
" 'determining its effect, its allegations shall be liberally con-
" 'strued, with a view to substantial justice between the
" 'parties,' if not wholly inconsistent with the principal rule
"would at least recognize the modification thus given by
"Chitty. Thus in a case in New York, the ambiguous words
"referred to preceding parts of the complaint, and could not
"be understood without such reference, and they might gram-
"matically refer to that which would make them intelligible,
"and, together, state facts which would constitute a cause of
"action, or to another averment which would create no liabil-
"ity. The court gave it the former reference, both in obedi-
"ence to the statute and the modification of the rule in com-
"mon law pleading, notwithstanding it was most favorable to
"the pleader."

At page 132 of Swan on Code Pleading, it is said:

"The language of pleading then is to have a fair and reason-
"able intendment, and should be construed as in a contract
"according to the popular sense. When equivocal or ambig-
"uous expressions are used, so that the precise nature of the
"charge or defense is not apparent, the opposite party on
"motion can compel an amendment. But if no motion is
"interposed, that construction of doubtful or equivocal ex-
"pressions is to be adopted which will support the pleading."

And further, at page 166 of Swan on Code Pleading, it is
said:

"We now return to the second rule above stated. The
"code, as if to treat contemptuously the special demurrers of
"the common law, does not permit parties to present to the
"court an issue in the pleading to determine the question,
"whether the pleading is so indefinite and uncertain as not
"to show the precise nature of the cause of action or defense.
"The matter is disposed of summarily by the court. If the
"precise nature of the charge or defense is not apparent, on
"account of the indefiniteness and uncertainty of any or all
"the allegations, the court on motion will require the plead-
"ing to be made definite."

In Maxwell on Code Pleading, at page 11, the author in referring to the common law rule, that pleadings are to be construed most strongly against the pleader, uses this language:

"The rule above stated is subject to this qualification, that "the language of the pleader is to have a reasonable intend- "ment and construction, and when an expression is capable "of different meanings that shall be taken which will support "the declaration and not the other which will defeat it."

And at page 18 the same author further states:

"If a pleading is ambiguous, uncertain in its statement of "facts, quantity, quality, time, place, value or in any other "respect, but fairly construed shows a liability of the defend- "ant to the plaintiff the code provides one remedy for all cases, "viz.: a motion in which the defect complained of must be "pointed out and if not objected to by motion it will be "waived."

The authorities cited by the authors quoted from abundantly support their statements of the rule, and I will not burden this opinion by quoting from the adjudicated cases. At this day there is no earthly chance to doubt the correctness of the rule as stated by them, or that it is upheld not only by reason but by the overwhelming weight of authority. In some of the States, as California for instance, the fact that a pleading is indefinite and uncertain and ambiguous, is a ground for demurrer and made so by statute; it is apparent that decisions under the statutes of such states have no application to our code.

We will now consider the next reason assigned in support of the argument, viz.: That "it is a maxim of the law that good "faith in business transactions is a settled presumption of the "law." I doubt the entire accuracy of this statement very much, but it is true that it is a presumption of law that every one has conformed to the law, of course, this is a rebuttable presumption. And it is also true that the law will not presume fraud; it must be clearly proved by the one who alleges it. I do not understand however that these rules have any application to the construction of a pleading. Mr. Chitty

states in the quotation above set forth from Bliss on Code Pleading, that if the pleading "be clearly capable of different "meanings, it does not appear to clash with any rule of con- "struction applied even to criminal proceedings to construe it "in that sense in which the party making the charge must be "understood to have used it, if he intended that his charge "should be consistent with itself." 1st Chitty on Pleadings, 16th Am. Ed., bottom page 338.

I know of no authority to the contrary, certainly counsel have not referred us to any. If this rule of construction will obtain in a criminal case, in order to uphold an indictment, it certainly will in a civil case brought to obtain redress for a civil wrong. But what application has this so-called presumption of good faith in business transactions to do with this case? Upon what fact stated in the petition is it to be based? It is alleged that some time prior to the sale the defendant fraudulently and for the purpose of hindering, delaying and defrauding the creditors of the mortgagors, and especially this plaintiff, procured his two mortgages. It is further alleged that at a time when there was in existence a valid mortgage prior and superior to defendant's resting upon the sheep, of which defendant at all times mentioned had full knowledge, the mortgagors at the request and instigation of the defendant sold and disposed of all of said sheep. It is then alleged that the defendant fraudulently and for the purpose of hindering, delaying and defrauding the creditors of the mortgagors and especially this plaintiff collected and retained the proceeds of the sale of said sheep. Words are to be construed in their ordinary popular sense, and with this in view we will examine very briefly into the meaning of the words used to express the defendant's connection with the act of sale. The statement is that it was accomplished at his "request and instigation." To say that one "requested" another to do an act does not imply that there was anything wrong in the act, but to say that one "instigated" another to do any act does imply that the act itself was wrongful. The word is never used properly with reference to a good, virtuous, lawful act. Mr. Crabb in his learned and scholarly work on English

Synonyms, in discussing the use of this word at page 378, says: "We may be impelled, urged and stimulated to that "which is bad; we are never instigated to that which is good. "We may be impelled by curiosity to pry into that which does "not concern us. We may be urged by the entreaties of those "connected with us to take steps of which we afterwards re- "pent. We may be stimulated by a desire of revenge to many "foul deeds, but those who are not hardened in vice require "the instigation of persons more abandoned than themselves, "before they will commit any desperate act of wickedness."

Sir William Blackstone at page 36 of the 4th Book of his Commentaries, uses the word thus: "So that if a servant in- "stigates a stranger to kill his master," etc. And wherever the word is properly used, the act instigated to be done is always wrongful. And hence it follows that with reference to every act charged against the defendant in this petition each one thereof is fairly alleged to be wrongful. The sale alleged can be held to be no other than an absolute sale of all of the sheep and not a sale of the mortgagor's qualified interest in them. Being an absolute sale it was necessarily in defiance of and in hostility to plaintiff's mortgage, and in fraud of plain- tiff's rights. And it follows that the sale comes fully within the allegation "that the plaintiff had no knowledge of the "said fraud and fraudulent acts of the defendant and did not "discover the same until long after the sale and disposal of the "mortgaged property," etc.

It does then fairly appear from the petition that the sale was without plaintiff's knowledge, and that being so it is a fair inference that it was without his consent; and the sug- gestion that for aught that appears in the petition it might have been with his consent falls to the ground of its own weight; but this is immaterial, because it is well settled that while in an action based upon a wrong, the consent of the plaintiff to the commission thereof is a complete defense in obedience to the maxim "Volenti non fit injuria?" Still it is the well settled rule that the defense of leave and license or consent is new matter which must be affirmatively pleaded by the defendant as a defense. Pomeroy's Rem. & Rem.

Rights, Sec. 712; 1st Chitty on Pleading, 16th Am. Ed., Bot. page 664-665; Beatty v. Swarthout, 32 Barb., 294; Grovour v. Daniels, 7 Blac., 108; Snowden v. Wilas, 19 Ind., 10; Chase v. Long, 44 Ind., 427; Alford v. Barnum et al., 45 Cal., 482-485.

I am clearly of opinion that it must be held that the petition alleges an unlawful sale in hostility to and in defiance of the plaintiff's mortgage, and in fraud of his rights; and I will here add, in order to meet another objection which has been urged, that the allegation that the mortgagors sold the sheep will on demurrer be deemed to imply that they perfected the sale by delivery to the purchaser. Clark v. Meigs, 13th Abbot. Practice, R. 467.

It necessarily results from what has been said in connection with what we will hereafter state, that the allegation of the sale sets forth that character of sale which was as against the plaintiff a tortious conversion of the property by the parties making the sale; and here we are met with this contention: "It is believed to be beyond question, as a legal proposition, "that there cannot be a conversion of personal property with- "out possession; there is not a word in the petition to show that defendant ever had possession of the property, therefore he could not be guilty of a tortious conversion thereof." In answer to this, I have but little to say. It is an astonishing proposition as applied to the facts of this case, as we view the facts. Lawrence & McGibbon did an act which was a tortious conversion of personal property as against the plaintiff, they did this act at the "instigation" of defendant, who had full knowledge of plaintiff's rights. How then can it be seriously asserted for one moment that the defendant is not guilty of precisely the same offense, the same trespass, the same wrong which Lawrence & McGibbon were guilty of. It is useless to discuss the matter, the true doctrine is so entirely elementary. At page 36 of the 4th Book of Blackstone's Commentaries, the distinguished author states:

"In treason all are principals propter odium delicti: in "trespass all are principals because the law quæ de minimis "non curat, does not descend to distinguish the different shades

"of guilt in petty misdemeanors.  It is a maxim that acces-
"sorius sequitur sui principalis and therefore an accessory can-
"not be guilty of a higher crime than his principal;  being only
"punished as a partaker of his guilt.  So that if a servant in-
"stigates a stranger to kill his master, this being murder in
"the stranger as principal, of course the servant is accessory
"only to the crime of murder:  though had he been present
"and assisted, he would have been guilty as principal of petit
"treason and the stranger of murder."

If under the law, one who instigates another to the com-
mission of a crime is guilty as principal, how can it be doubted
that one who instigates another to the commission of a civil
wrong is as completely a principal as he would have been had
he actually performed the wrongful act himself.  Henderson
v. Foy, 11 Southern Rep., 441-442.

But it is further urged that there is nothing in the petition
to show that default had occurred in the condition of the
mortgage to plaintiff, and therefore he is in no situation to
maintain an action for conversion, as it does not appear that
his right to the possession of the property had accrued.  Let
us admit the proposition of law at the foundation of this con-
tention, and apply it to the facts alleged.

In section 1 of Jones on Chattel Mortgages, a chattel mort-
gage is there defined  "A formal mortgage of personal prop-
"erty is a conditional sale of it as security for the payment of
"a debt or the performance of some other obligation.  The
"condition is that the sale shall be void upon the performance
"of the condition named."  No particular form of words is
necessary to a chattel mortgage, if the foregoing elements ap-
pear.  The petition alleges that on October 6, 1884, the mort-
gagors by their mortgage of that date conveyed to the plain-
tiff the sheep described to secure the payment of two notes,
one payable July 6, 1885, the other payable July 6, 1886.
It is further alleged that of the indebtedness so secured, some-
thing over $6,000.00 thereof is still due and unpaid.  Now it is
clear from the allegation of these facts, that the execution and
delivery of an instrument of sale is alleged;  it is also clear
that the condition of the sale, to-wit:  to secure the payment

of a particular, specified indebtedness is alleged upon the performance of which the instrument of sale should become void —and it is just as clear that a breach of that condition, or a default in that condition has occurred, because it is certain that the debt has not been fully paid. Now, when did that default occur? certainly not later than the maturity of the last note, to wit: July 6, 1886. It seems to me that there can be no possible doubt about this matter, and that no other conclusion can be arrived at than that a default in the condition of the mortgage had occurred long before the illegal sale of the sheep, and that being so it cannot be doubted that under these facts the plaintiff had at least a special property right in the sheep, coupled with a present right to the possession thereof, and under such circumstances a wrongful sale of the sheep was a tortious conversion as against the plaintiff. 2nd Greenleaf on Evidence, Sec. 642; Bishop Non-Contract Law, Sec. 404.

Counsel for defendant in error in discussing this matter have evidently had the above view in mind, for in their brief they say: "Is the court to say in the absence of allegation "that the time for payment was not extended. Is the court "to say that the mortgage itself did not provide for such ex-"tension of time?" In reply we have simply to say that we do not say anything of the kind. We do not know anything at all about there having been any extension of time for the maturity of the secured indebtedness. And we never before heard an intimation that there was any rule of construction which would in the remotest degree permit a court to indulge in any such speculations. There is, however, a rule of which we are aware, and it is well established that if anything has occurred between these parties which would in any way abrogate, modify or change the original contract, or if the mortgage provides otherwise than is alleged, it is for the defendant to set it up as a defense; in that way and in that way only can such facts, if they exist, be brought into this case.

At page 667 of Maxwell on Code Pleading, the author gives a form of a petition to foreclose a chattel mortgage, in which appears the following averments, only:

First. The indebtedness and its description, showing its amount and when it becomes due.

Second. The execution of the mortgage conveying the property described therein as security for the payment of the debt.

Third. The recording of the mortgage.

Fourth. The fact that the indebtedness was not paid when due nor afterwards.

Fifth. The amount still due upon the debt.

Sixth. Prayer for foreclosure.

Of course, no foreclosure could be had except in case of a default in the condition of the mortgage, and certainly a default is alleged when it is stated that the indebtedness secured by the mortgage is not paid and it further appears that it has matured.

Every one of the averments set forth in the form mentioned, is fully stated in the petition in this case. See also Jones on Chattel Mortgages, Sec. 699, and cases cited; Woodside v. Adams, 40 N. J. Law, 417; Burton v. Tannehill, 6 Blachf., 470; Jones on Mortgages, 1st Vol., Secs. 69 and 75.

But it is said that the foregoing tends to show that the defendant has been guilty of a tortious conversion of plaintiff's property, and in such case the measure of damages is the value of the property converted, and inasmuch as the petition is lacking in allegations as to the value thereof, it cannot be upheld as a petition in an action for conversion. Let us admit for the purpose of this case the correctness of this contention. The petition itself furnishes the answer and a complete answer to the objection. Not only are facts alleged which show a tortious conversion of plaintiff's property right in the sheep, by means of a wrongful sale thereof at the request and instigation of defendant, but it is further alleged that the defendant fraudulently and for the purpose of hindering, delaying and defrauding the creditors of the mortgagors, and especially the plaintiff, collected and retained the proceeds of that sale, to wit: the sum of twenty thousand dollars. There can be no doubt that the interest of plaintiff in the property sold was the balance due him upon the indebtedness secured

by his mortgage. It is further alleged that after defendant received these proceeds, plaintiff demanded of him the said balance and was refused. Under these facts I can come to no other conclusion than that they show a condition of affairs in which it appears that the defendant has money of the plaintiff which in equity and good conscience he ought to pay over to plaintiff. 2nd Greenleaf on Evidence, Sec. 117.

The law is well settled that where one has tortiously taken another's property and sold it, or being lawfully possessed of it has wrongfully sold it the owner may recover the proceeds of the sale. 2nd Greenleaf on Evidence, Sec. 120; Jones v. Hoar, 5th Pick., 285.

In Executors of Ashe v. Executors of Livingston, 2nd Bay's Reports (S. C.) 80, the facts were as follows:

In 1778 Berwick executed a mortgage upon realty to Ashe. Owing to the confusion of the war at that day it was not recorded. It was found in 1791 among a lot of old papers by the mortgagee's executor, the mortgagee having died in the meantime, as also had Berwick, the mortgagor. In 1787 Livingston's executor obtained a judgment against Berwick's estate, and in 1788 Rivers, a creditor, also obtained a judgment against said estate. Execution was issued under the junior judgment and the property mortgaged to Ashe sold. The proceeds were paid by the sheriff to Livingston's executor, as his judgment was superior to that under which the execution was issued, and he paid the funds out in discharge of the debts of the estate. Up to this time neither Livingston's executor, nor Rivers, nor the sheriff, had any notice or knowledge of the mortgage. Upon the discovery of the mortgage in 1791, Ashe's executors brought suit against Livingston's executor for the proceeds of the sale, as for so much paid by mistake to their use. The action was upheld against Livingston's estate by the unanimous opinion of the court of appeals. The court holding that the mortgage, though unrecorded, was valid as against the judgments, and that plaintiff could maintain an action for money had and received. Notwithstanding the fact that he could, had he so elected, have followed the property and subjected it to his mortgage. There

was no question of bad faith in the case, and the case goes very much farther than we do in the case before us. Of course under our statute an unrecorded mortgage would be void as to subsequent purchasers and mortgagees in good faith and without notice, but in the case at bar there is no question as to the validity of the mortgage.

At common law the owner could recover in an action for money had and received, but under the code requiring the petition to set forth the facts constituting the cause of action in plain and concise language, it is very doubtful if in such case as this the common law declaration for money had and received would be sufficient. In speaking of the "Common Counts" where incorporated in pleadings under the code, it is said at page 178 of Swan on Code Pleading:

"Thus if the plaintiff alleges that the defendant is in-"debted to the plaintiff for money had and received for the "plaintiff's use the plaintiff would be permitted under the "code to prove that A. remitted money to the defendant to "pay to the plaintiff and that the defendant promised to pay "it to him, but under such a petition the plaintiff would not "be permitted to prove as at common law under such a count "in assumpsit, that the defendant had tortiously taken the "plaintiff's goods and sold them; or that money had been ex-"torted from the plaintiff by the defendant under duress and "protest, etc., for this would be an entire departure from the "facts stated in the petition and could only be sanctioned by "giving to the allegations of the petition the fictitious legal "effect which belongs to a common count, under the abolished "rules of pleading at common law."

Pomeroy's Rem. & Rem. Rights, at Sec. 544, is to the same effect.

As stated in the former opinion, "it fairly appears that the "defendant is guilty of a wrongful conversion of plaintiff's "property; that by means and as a result of such conversion "defendant obtained and has retained a sum of money largely "in excess of plaintiff's debt; that the measure of plaintiff's "recovery is the amount of his debt secured by the mortgage,

"and this amount the defendant ought in equity and good "conscience pay over to plaintiff."

The facts leading to this conclusion having been alleged, it is entirely immaterial what the form of the action is, all forms of action having been abolished by our statute.

The foregoing effectually disposes of the important matters urged upon the argument. But there is one other matter to which I wish briefly to refer. In the former opinion of the majority of the court, the petition was set forth in full, as a statement of facts, and appended to the opinion. In the body of the opinion there was a brief paraphrase of the petition. There was no sort of pretense that the opinion set forth the language of the petition, but only a brief statement in the language of the writer, of the substantial facts set forth at great length in the petition.

In referring to the act of sale, and the defendant's connection with it, it was stated in the opinion that the defendant "requested, instigated and procured" the mortgagors to sell and dispose of the sheep, etc. The word "procured" was evidently used for the purpose of expressing the idea that through the instigation of the defendant the sale had been accomplished, and could have been understood in no other way. In the petition for rehearing, in briefs of counsel, and at the argument, a great deal was said about the use of the word "procured." And with reference thereto it was said: "To "procure means to bring about, to effect, to cause, one who "procures is one who acts and not one who suggests. Upon "what theory can this court add to the language used by the "plaintiff. Is it to frame a petition for him. Is this court "not content with breathing life into this petition by way of " 'reasonable intendment,' to go so far as to build a founda- "tion for its theory by adding to the record too," etc. This is strong language, but I am frank to admit that if the facts justify it, it is none too strong; if it is not justified by the facts then it is safe to say that it is at least in exceeding bad taste. One or two illustrations drawn from recognized masters of style will demonstrate whether there was any substantial ground for the objection or whether it owes its origin to

a spirit of mere hair-splitting hypercriticism. At page 36, Book 4, Blackstone's Commentaries, the author, who certainly understood the use of the English language, uses with approval Sir Matthew Hale's definition of an accessory before the fact, as "one who being absent at the time of the crime "committed, doth yet procure, counsel or command another "to commit a crime." And in the text just preceding this definition he states that a servant who "instigates" a stranger to kill his master is an accessory before the fact. There can be no doubt then that it may properly be said of one at whose "instigation" a crime was committed, that he "procured" the commission thereof. At Section 604 of 1st Bishop's Criminal Law, the author uses this language:

"Persuasion is one form of attempt. It is therefore in-
"dictable to persuade or hire a person to commit a crime,
"especially of the heavier sort, though he declines to do it, or
"undertakes it and fails. Yet if this person actually does what
"he is persuaded or hired to do, the effort of the procurer
"ceases to be called an attempt, because it has become a suc-
"cess."

Can we doubt that here the word "procurer" is used to mean the same thing as "persuader," and certainly the word "persuade" is not so strong a word as the word "instigate." In the case of Long v. State, 23 Neb., at page 45, the court say: "It is insisted that the language of the charge in which "the words 'requested, advised and incited' were used, is not "synonymous with the words 'aid, abet or procure' as used in "the statute." The court held the objection without foundation.

These illustrations are, I think, sufficient to show that counsel were at least mistaken.

Looking at the allegations of this petition as I do, it is clear to my mind and judgment that it sets forth an actionable wrong on the part of the defendant for which he should answer, and it would be a travesty upon justice to say that plaintiff should go out of court without redress or without even calling upon the defendant to respond to these allegations. If, however, the real facts are not as alleged, accord-

ing to the construction hereinbefore given to the language of the petition, but are in accord with the contention of counsel for defendant, as is intimated by them, then, and in such case, no substantial injury or wrong is done the defendant, because he has only to answer the petition, setting forth the real state of the case as a defense to this action, and if upon trial it should appear that no wrong was done the plaintiff by the defendant of course he will not be permitted to recover. While on the other hand if it should appear that wrong has been done him at the instigation of the defendant he should have redress, and in this way real substantial justice would be measured out to the parties, as is the bounden duty and only legitimate object of the courts.

The judgment of the court below should be reversed and the cause remanded to that court with instructions to permit defendant in error to answer plaintiff's petition, and for further proceedings in accordance with this and the former opinion rendered herein.

*Judgment reversed.*

GROESBECK, C. J., concurs.


CONAWAY, JUSTICE, dissenting.

Upon the first hearing of this cause in the court I felt compelled to dissent from the decision of my brethren upon the bench, and stated in brief some reasons for such dissent. I hoped that on further consideration we might be able to harmonize our views. In this hope I have been disappointed; and it now becomes necessary that I develop my views as completely as time and opportunity permit. Differing radically from my associates it will be necessary that I discuss their views freely. At the same time I shall certainly do so with much deference and respect, as they are the views of the majority of the court, and settle the law of the case.

The charging part of the petition in this case appears in full in the opinion of the court on the first hearing, supra.

It is quite apparent from an inspection of the petition,

and will be abundantly apparent from a review of the authorities cited by the learned counsel for plaintiff in error, that the primary theory upon which they brought this action is that the lien of the mortgage of plaintiff in error follows and attaches to the proceeds of the sale of the mortgaged chattels in defendant's hands, and that this action is in the nature of a suit in equity for the enforcement of a lien or trust. Thus counsel say in their first brief: "The case for the plaintiff presents a very simple proposition. The parties were not favored with an opinion upon the question by the court below, and it is therefore difficult to do more in this brief than to present a most general statement of the position of the plaintiff.

"Two propositions are involved.

"I. That the plaintiff's mortgage was and continued to be a lien upon the property up to the time of sale prior and paramount to the lien of the defendant.

"2. Upon the sale of the property these liens attached in the same order of priority to the proceeds."

Upon this question counsel have not yet succeeded in getting a judicial opinion. It would seem that the court does not sustain the second of the above propositions, as the petition is sustained as stating a cause of action for the conversion of plaintiff's property, without mentioning this proposition of plaintiff made in defining his position and explaining his cause of action.

In a later brief counsel for plaintiff in error say:

"It is of no consequence to the plaintiff, and ought not to be to the defendant, and, therefore, not to the court, which is concerned only with justice, whether the plaintiff's remedy is for a conversion of the property, or for a conversion of the proceeds, for money had and received or for an accounting under a constructive trust."

As to this it must be said that it makes a very material difference in the facts necessary to be alleged and proven whether the cause of action is the conversion of plaintiff's property or the conversion of a fund charged with a lien or trust, or money had and received to plaintiff's use on a fictitious con-

tract, or money in defendant's possession which he ought in equity and good conscience to pay over to plaintiff. It is not necessary to plaintiff's cause of action, as in the nature of a suit in equity for the enforcement of a lien or trust against the proceeds of mortgaged chattels in favor of the mortgagee, that plaintiff should allege or prove that he had title to or right of possession of the mortgaged chattels at the time of the alleged sale, and he has not so alleged. A mortgage in equity conveys no title and confers no right of possession to the mortgagee. Allegations of title and right of possession would be inconsistent with the plaintiff's cause of action as defined in his original brief, and intended to be stated in his petition. But such allegations are necessary in the statement of a cause of action for the conversion of property, and which the court says is the cause of action actually stated in the petition, and the court supplies them by implication.

It is not necessary to plaintiff's cause of action as for the enforcement of a lien or trust that he should state or prove the condition of the mortgage in question or a breach of that condition; and he has not so stated. Such allegations would have made his equities all the stronger, and it is to be presumed he would have made them if they are true. He cannot be accused of falsehood if they are false. It is necessary to a cause of action for the conversion of mortgaged chattels to state the condition of the mortgage and a breach of that condition when these facts are relied on as conferring title and right of possession, and the court has supplied such allegations by implication.

It is not material to plaintiff's cause of action as for the enforcement of a lien or trust against the proceeds of the alleged sale of the mortgaged chattels that plaintiff should allege or prove that the sale itself was wrongful or fraudulent, or made without his knowledge or consent, and he has not so alleged. Such allegations would have made his equities all the stronger, and it is to be presumed he would have made them if they are true. He cannot be accused of falsehood if they are false. But such allegations are quite material to a cause of ac-

tion for the conversion of the property, and the court sup-
plies these by implication.

It is not material to plaintiff's cause of action for the en-
forcement of a lien or trust that he should allege or prove
that the request for or instigation of the sale of the mort-
gaged chattels was wrongful or fraudulent. Such allegation
would have made his equities all the stronger under the peti-
tion, and it is to be presumed he would have made it if it
is true. He cannot be accused of falsehood if it is false.
Such allegation is material to his cause of action as for a con-
version of the property and the court supplies it by implica-
tion.

In stating his cause of action as for a conversion of a fund
charged with a lien or trust plaintiff alleges that defendant
fraudulently collected and retains the proceeds of the alleged
sale of the mortgaged chattels, and alleges a demand for and a
refusal to pay plaintiff's claim. If defendant is liable for a
conversion of the property it makes no difference in his lia-
bility whether he received any of the proceeds of the sale of it
or not.

It has also been urged that defendant, under the allega-
tions of this petition, may be liable neither for the conversion
of a fund charged with a lien or trust, nor for a conversion
of the mortgaged property, but really liable for money had
and received to plaintiff's use, or for money in his possession
which in equity and good conscience he ought to pay to plain-
tiff.

In this conflict of views I approach the task of endeavoring
to determine for myself which is the better view with much
diffidence. And this diffidence is intensified by an oppres-
sive consciousness of the impracticability of discussing the
numerous important questions involved in a single opinion
of reasonable length. If I could consider the petition suffi-
cient in any point of view I might confine my discussion to
that particular view as the court has done. But regarding
the petition insufficient in any view of it, it is necessary to
discuss them all.

In Wisconsin the courts will not do this. On general de-

murrer they first determine what cause of action the petition is designed to state, and then whether it states facts sufficient to constitute such cause of action. If it do not the demurrer will be sustained. (Supervisors v. Denner, 30 Wis., 624; Pierce v. Carey, 37 Wis., 232.) The general demurrer under our code is for the reason that the petition does not state facts sufficient to constitute a cause of action. It would seem that if the petition state facts sufficient to constitute any cause of action it is not subject to demurrer on this ground, and that if it states facts sufficient to constitute a cause of action it must be presumed that it was designed to state that particular cause of action.

It is probably as well to consider first the primary proposition of counsel for plaintiff in error that the mortgage liens follow the proceeds of the sale of the mortgaged chattels.

How far short counsel come of establishing this proposition as a general rule of law for mortgaged chattels sold and transferred by mortgagors in possession will be apparent from a short statement of the nature of the cases cited as establishing the rule.

Gibson v. Worden, 14 Wall., 244, is a case of property lawfully converted into money by an assignee in bankruptcy, the money taking the place of the property.

Olcott v. Bymun, 17 Wall., 44, is a case of deed of trust of realty to secure the payment of a sum of money in three installments. When default was made in the payment of the first installment the mortgaged realty was sold in execution of the power of sale in the trust deed. Held, that the trustee should not, after paying the first installment, pay the surplus left to the mortgagor, but should hold it for the payment of the other two installments

Platt v. Bright, 31 N. J. Eq., 86, is a case where mortgaged realty was converted into money by condemnation proceedings, the money taking the place of the property.

Gumble v. Stolte, 59 Ind., 446, same as last.

Ball Adm'r v. Green, 90 Ind., 75, is a case of a mortgage by an heir of his inheritance. The land was sold by the administrator to pay the debts of the decedent. Held, that sur-

plus proceeds in the hands of the 'administrator should not be paid to the heir in full, but should be charged with the lien of the mortgage.

It will be observed that these are all cases of the lawful conversion of property into money by lawful authority, to the exclusion and destruction of the mortgage lien upon the property. The money was lawfully substituted for the property.

In the case of Executors of Ashe v. Executors of Livingston, 2 Bay (S. C.), 80, it was held that a judgment lien was inferior to the lien of a prior unrecorded mortgage of realty, according to the principles announced in the case of Hicks v. Frank, decided at the present term. Evidently the registration laws of South Carolina did not protect judgment liens on real estate, against unregistered mortgages or secret sales. No such decision could ever have been made in case of a chattel mortgage, which was void at common law unless accompanied by delivery of the goods to the mortgagee, until the registration laws were passed avoiding the necessity of delivery.

Brown v. Stewart, 1 Md. Chancery, 87, was a case where mortgaged chattels had been sold out of the State by the mortgagor, and the proceeds deposited by him in a bank in his own name. Held, that the mortgage lien would be enforced against the identical money received for the mortgaged chattels, but not against other money deposited by the mortgagor in the same bank.

Other cases cited are still more widely different from the case made by the petition.

It is not a general rule of the law that a mortgagee may enforce his lien against the proceeds of a sale of mortgaged chattels by the mortgagor in possession, when such proceeds are in the hands of third persons. It is not necessary that a creditor in accepting payment by his debtor, or that a vendor in accepting the purchase price of property, sold by him, should inquire and ascertain where and how the debtor or vendee acquired the money paid, on pain of being held liable as a conversioner, or as trustee of a constructive trust, if the money was the proceeds of a sale of mortgaged chattels. The

reverse of this is the rule. And plaintiff has not brought himself within any recognized exception.

So far I have been considering the action as for the enforcement of a lien or trust, an action in its nature purely equitable. If the court had found it necessary to consider this phase of the case, and to construe the alleged chattel mortgage in so doing, it would have been compelled to hold to the doctrine of equity as distinguished from the law, and to announce, with all judicial solemnity and authority, that the title to the mortgaged chattels is in the mortgagor. But the court considers the petition as stating a cause of action in the nature of the common law action, of trover for the conversion of property, or for trespass or money had and received to plaintiff's use, or something of the nature of a common law action as distinguished from a suit in equity, and holds, with equal judicial solemnity and authority, that the title to the mortgaged chattels is in the mortgagee. And in so holding the court is sustained by abundant authority.

It is true that some courts have recently shown a disposition to do away with this technical doctrine of the common law as distinguished from equity, and to hold that a chattel mortgage in law is just what it has long been in equity, and what it practically is in business, a security by way of lien, and not a conveyance of title, the beneficial title remaining in the mortgagor.

When the courts reach the advanced position to which they are evidently tending there will be an end to the action for the conversion of mortgaged chattels. The law of chattel mortgages is now undergoing a process of development, progress and reform, similar to what has already been effected in the law of mortgages of real estate. That the courts, under the reformed procedure of the codes, would free themselves from much of the inconsistency in the principles of law and equity, as distinguished from each other, was evidently expected by able commentators. Jones, in his work on chattel mortgages, adheres quite strictly to the legal view. But he says at Section 12: "In many States all distinction between law and equity has been abolished by statute, so that

equitable principles are applied in proceedings which are in form actions at law."

It evidently had not occurred to this author that a court in construing a chattel mortgage in an action in the nature of a suit in equity would hold the title to be in the mortgagor, and that the same court, in an action in the nature of an action at law between the same parties, would hold the same chattel mortgage to vest the title in the mortgagee. Herman goes much further in the direction of reform than does Jones. Some courts have already freed themselves from this particular inconsistency by adopting the equity doctrine of chattel mortgages in all cases. As the court says in the case at bar, the great weight of authority is against them. So in 1737, when Lord Hardwicke first held that a mortgage of real estate in equity was but a lien, every authority was against him. But his decision was recognized from that time forward as correct.

But the work of reforming the common law is now more legislative and less judicial than formerly; and I will consider this case, as the court does, from the common law standpoint.

The Wisconsin courts require a pleader to reveal the cause of action which he brings suit on, and will consider no other on demurrer. I do not go to that extent, though there is much reason in the rule. It would seem not to be too much to expect of a plaintiff when he commences an action, that he should know what his cause of action is, and that his attorney should inform the opposite party and the court what it is by the pleading. But let it be admitted that it is proper, or rather permissible, for a plaintiff to allege in his petition a mass of facts, some tending to establish one cause of action and some another, or a number of others, and leave it for the court to determine for him which is his proper cause of action, if he has any. When his case has reached a court of last resort, and is sent back to the trial court for further proceedings, it is certainly time that the question of what the cause of action is should be determined. This point has now been reached, and, as I understand the position of the court, it has

found that the petition states facts which constitute two causes of action. They arise, however, from transactions connected with the same subject of action, and that there are two causes of action is important only because allegations and proof sufficient to sustain one of them may not be sufficient to sustain the other. Lest I be not strictly accurate in stating the position of the court, I will do so in its own language. The court says: "Not only are facts alleged which show a tortious conversion of plaintiff's property right in the sheep, by means of a wrongful sale thereof at the request and instigation of defendant, but it is further alleged that the defendant fraudulently and for the purpose of hindering, delaying and defrauding the creditors of the mortgagors, and especially the plaintiff, collected and retained the proceeds of that sale, to wit: the sum of twenty thousand dollars. There can be no doubt that the interest of the plaintiff in the property sold was the balance due him upon the indebtedness secured by his mortgage. It is further alleged that after defendant received these proceeds, plaintiff demanded of him the balance and was refused. Under these facts I can come to no other conclusion than that they show a condition of affairs in which it appears that the defendant has money of the plaintiff which in equity and good conscience he ought to pay over to plaintiff."

To sustain an action for conversion of plaintiff's property it is necessary to allege and prove title in the plaintiff, coupled with possession or a present right of possession. This may not be necessary to the cause of action for money which defendant ought in equity and good conscience to pay over to plaintiff. This cause of action might arise from the sale of the property considered merely as destroying plaintiff's mortgage lien, on the equitable view that the mortgage was only a lien and not a conveyance of title to the mortgagee.

First, as to the conversion:

Neither title, possession nor right of possession is expressly alleged in the petition. Allegations of title and right of possession are supplied by implication. Upon this branch of the subject the court says:

"In Section 1 of Jones on Chattel Mortgages, a chattel

"mortgage is there defined, 'A formal mortgage of personal
" 'property is a conditional sale of it as security for the pay-
" 'ment of a debt or the performance of some other obligation.
" 'The condition is that the sale shall be void upon the per-
" 'formance of the condition named.' No particular form of
"words is necessary to a chattel mortgage if the foregoing
"elements appear. The petition alleges that on October 6th,
"1884, the mortgagors by their mortgage of that date con-
"veyed to the plaintiff the sheep described to secure the pay-
"ment of two notes, one payable July 6, 1885, the other pay-
"able July 6, 1886. . It is further alleged that of the indebt-
"edness so secured something over $6,000.00 thereof is still
"due and unpaid. Now it is clear from the allegations of
"these facts that the execution and delivery of an instrument
"of sale is alleged, it is also clear that the condition of the sale
"to wit: to secure the payment of a particular specified indebt-
"edness is alleged upon the performance of which the instru-
"ment should become void, and it is just as clear that a breach
"of that condition has occurred, because it is certain that the
"debt has not been fully paid. Now, when did that default
"occur? Certainly not later than the maturity of the last
"note, to wit: July 6, 1886. It seems to me that there can
"be no possible doubt about the matter, and that no other
"conclusion can be arrived at than that a default in the con-
"dition of the mortgage had occurred long before the illegal
"sale of the sheep, and that being so it cannot be doubted
"that under these facts the plaintiff had at least a special
"property right in the sheep, coupled with a present right to
"the possession thereof, and under such circumstances a
"wrongful sale of the sheep was a tortious conversion thereof
"as against the plaintiff."

I concur with the court in calling the mortgage an instru-
ment of sale. All the property in the mortgaged sheep which
plaintiff had was what was sold to him by the mortgagors by
virtue of their mortgage on October 6, 1884. All the prop-
erty sold by the mortgagors at the instigation and request of
defendant, on the 20th day of May, 1889, was what was
"theretofore unsold." It is not "all of said sheep" simply,

but all of said sheep theretofore unsold. Not only does the petition fail to allege that any property of plaintiff was sold, but it expressly shows that no property of the plaintiff was sold.

It may be said that the reference intended by the pleader in using the words "theretofore unsold" was to a prior alleged sale, by consent of the mortgagee, of a portion of the sheep originally mortgaged. This is evidently true. The petition was evidently drawn upon the equitable theory that a mortgage is not a sale, but is a lien and conveys no title or right of possession. And the petition can be construed as stating or attempting to state a cause of action in conversion only by construing it entirely apart from the evident design of the pleader; and when so construed the allegations destroy each other. The mortgage must be considered as a sale and not a sale at the same time and for the same purpose—the purpose of sustaining the petition. If the mortgage was not a sale but merely a lien plaintiff had no property to be converted. If the mortgage was a sale whatever was sold by it was not included in a subsequent sale of property "theretofore unsold." This single consideration I must regard as conclusive against the theory of conversion; conclusive against the fiction of money had and received by defendant to plaintiff's use; conclusive against the possession of defendant of money which in equity and good conscience he ought to pay to plaintiff. The only possible cause of action not concluded is the impairment of plaintiff's security by the destruction of the mortgaged property or a portion of it, its removal beyond the operation of the mortgage, or the selling in parcels rendering it more difficult for plaintiff to follow with his mortgage lien. No such showing is made or attempted. This is all that I think necessary to say upon the question of the sufficiency of this petition. But I dissent additionally from the views of the court upon two important branches of the law; the law of pleading and the law of chattel mortgages. These are both in an unsettled and formative state, and what the court says now may have an important effect in shaping the law for the future.

The petition is logically and skillfully drawn to meet the requirements of plaintiff's primary theory of the case that defendant was holding a fund charged with a lien or trust.  It appears to be an exceedingly ingenious attempt to make out a cause of action from meager facts, upon a theory of the law which the court does not discuss.  In any other point of view the petition must appear as the work of a blundering tyro in the law, not from bad pleading, but from applying the pleading to a purpose foreign to the design of the pleader.

As to possession, so far as appears from the petition, plaintiff may have taken possession of the sheep in question immediately upon the execution of his mortgage, or at any time afterward, and may have possession yet.  The court cites a case to the effect that a sale of personal property implies delivery.  However true this may be under other circumstances it is absolutely erroneous as to sales of mortgaged chattels by either mortgagor or mortgagee.  Either or both may sell their respective interests without regard to possession.  If plaintiff has had possession and his possession has not been interfered with his property has not been wrongfully converted.

I believe I have not seen a more insidious fallacy advanced under the reformed system of code procedure than the idea that a petition may show a cause of action, without revealing what that cause of action is, or that a court should proceed to the trial of a cause without knowing what cause of action the plaintiff will endeavor to establish; whether his cause of action is in tort or contract, legal or equitable; in this case whether he will endeavor to establish his right to damages for a conversion of his property, or for the impairment of a security, or his right to an accounting under a constructive trust.  The evil of such a course is forcibly illustrated in this case.  In consequence of the jumbling of legal and equitable ideas and language, a mortgage of chattels is held to be a sale of a property which may be the subject of conversion, and at the same time it is held that this same property remained unsold.  This method of pleading is essentially vicious.  It does not state any cause of action complete.  It attempts to

make a nondescript cause of action from parts of several causes.

In implication upon implication to sustain this petition I think the court goes beyond all precedent. Pomeroy, it seems to me, states the rule of liberal construction in favor of pleadings as strongly as any. The word "intendment," as used by him in the passage cited by the court, is not synonymous with "supposition." It may be supposed, from a fact alleged, that another fact exists, and such supposition may be reasonable or probable. But inference by intendment is something more than guesswork. What is to be inferred by reasonable intendment from an allegation is something intended by it; something that must be true if the allegation is true. Something implied in the allegation. Pomeroy's use of the word "intendment" appears from his criticism of the New York case of Schofield v. Whitelegge, Pomeroy's Remedies and Remedial Rights, note at page 596. The complaint alleged that defendant had become possessed of and wrongfully detained from the plaintiff a piano of the value of four hundred dollars. There was an answer which denied the possession of any property belonging to the plaintiff, denied the wrongful taking, and denied the plaintiff's ownership. The complaint was dismissed at the trial on the ground that it stated no cause of action because it did not show that plaintiff had either a general or special property in the chattel, or the right of possession. Pomeroy's criticism is, in substance, that the wrongful detention alleged implies a property and a right of possession in plaintiff, because the detention could not otherwise be wrongful, a case of necessary intendment or implication.

In Marie v. Garrison, 83 N. Y., 15, an allegation of a refusal to exchange certain stocks was held to imply a tender of the stocks to be given in exchange for them, because without such tender no exchange could have been effected.

In Saulsbury v. Alexander, 50 Mo., 142, the petition alleged that the defendant sued plaintiff for work done and cash lent, "the particulars of which appear from the following account," giving the account, and concluding with a statement of the balance due, and prayer for judgment. Defendant answered

setting up that the work had been negligently done, and that he had already paid more than its value. Plaintiff had judgment, and defendant moved in arrest of judgment on the ground that no cause of action was alleged. This motion was overruled. The court says: "When we say that a judgment should be arrested if the petition fails to show a cause of action we speak of substantial and not of formal omissions. The latter are supplied by intendment, and will be presumed, after verdict, to have been proved."

These cases are among those that go furthest in the direction of a liberal construction in favor of pleadings. I will now give a few tending in the opposite direction.

Garner v. McCullough, 48 Mo., 318, was an action for an invasion of plaintiff's possession or right of possession. The petition alleged that the plaintiff in virtue of a contract with one Evans, was entitled to the exclusive possession of certain premises, and that after the execution of the Evans contract, the defendant, with knowledge of the plaintiff's right, purchased the premises and forcibly took possession of them and excluded the plaintiff. The defendant answered and put in issue the facts alleged. Who Evans was, his connection with the land, and the nature of plaintiff's contract with him were not set up. At the trial, on motion of defendant, plaintiff's evidence was excluded on the ground that the facts alleged, if proved, would not warrant a recovery. The supreme court affirmed the judgment.

State ex rel. v. White, 88 Ind., 587, was an action against a sheriff for failing to levy an execution, the petition alleging that he negligently permitted the execution defendant fraudulently to take his goods and chattels out of the State of Indiana, and beyond the reach of said execution. This was held fatally defective on demurrer as not stating that the goods and chattels were ever in the sheriff's bailiwick.

In Wright v. McCormick, 67 N. C., 27, the supreme court of North Carolina uses the following language: "It is a rule of construction of which no pleader has a right to complain that uncertainties and ambiguities in his pleadings shall be taken in the sense most unfavorable to him, for he has at all

times the power and it is his duty to make them plain. And· as if the uncertainty occurs by accident or oversight, he can cure it by amendment when it is pointed out, a failure to amend shows that the uncertainty is of purpose, and designed to mislead his adversary; and no party can be allowed to profit by such an artifice."

I will not attempt to harmonize the cases on pleading. Some courts hold that the common law rule that the allegations of a pleading are to be strictly construed against the pleader and taken in the sense most unfavorable to him, is abrogated by the provision of the code that pleadings shall be liberally construed with a view to substantial justice between the parties. Other courts enforce the common law rule and find it not inconsistent with the liberal construction required by the codes.

I will not attempt to decide which view is the correct one. The general language used by some of the courts in adopting one rule, to the exclusion of the other, or in holding them both in force and not in conflict, is of little practical assistance in the solution of questions of pleading. Courts differ widely as to what a liberal construction requires as applied to the language of a pleading. I am willing to go as far as the farthest, as I understand the cases, in the way of liberal construction, and, from this standpoint, I repeat, that I think the court has gone beyond all precedent in supplying important and material allegations by intendment or implication in order to sustain the petition in this case. Such allegations should not be supplied because they are probable. They should be found intended by or implied in the allegations made. They should be not only probably true but necessarily true, taking the allegations to be construed as true. Where two inconsistent inferences may reasonably be made from the allegations of a pleading, we can not say that either one is intended by or implied in it. Neither one can be taken as true.

Our code provides that the allegations of a pleading shall be liberally construed with a view to substantial justice between the parties. I do not object to the most liberal con-

struction of this rule by any of the authors so liberally quoted by the court. But the general language of the commentators leads to about the same diversity of opinion in its application to particular cases as does the general rule of the statute. It is only by a consideration of the facts of particular cases to which the rule has been applied that we can arrive at the real views of the different courts as to the application of the rule. The code provides that the petition must contain a statement of the facts which constitute the cause of action in ordinary and concise language, and makes it ground of demurrer that the petition does not state facts sufficient to constitute a cause of action. If the petition in the case at bar stated as a fact that the plaintiff was entitled to the possession of the property in question when he commenced his action, evidentiary facts tending to show the truth of this allegation might be proved without being alleged. But the right of possession is not alleged in ordinary and concise language, or in any language. And it is not implied in any allegation that is made. The court implies it from the further implication that the condition of the mortgage has been broken, and this implication of condition broken is founded upon the further implication that the condition of the mortgage is that certain notes, given to secure the payment of the indebtedness which the mortgage was given to further secure, should be paid at maturity. And the implied right of possession rests upon the yet further implication or assumption that the terms of the mortgage are such as to vest in the mortgagee the right of possession on breach of the condition. This last is mere assumption or supposition. A mortgage of personal property, just as formal as that described by Jones in the quotation in the opinion of the court, is that provided for by our statute containing a power of sale. This power of sale may be vested in the "mortgagee or any other person." Rev. Stat. Wyo., Sec. 80. The right of possession may not vest in the mortgagee by virtue of the mortgage at any time or under any circumstances. The right on default and forfeiture to seize, advertise, and sell the mortgaged property may be vested in "any other person." The assumption that the term of the mortgage extended to no

later date than the maturity of the note having the longest time to run is a gratuitous assumption. There is better ground in the petition for the contrary assumption. It is alleged that the mortgage was executed and filed for record on the 6th day of October, 1884, and was duly recorded, and that it was in full force and effect at the filing of the petition on the 19th day of December, 1889. A chattel mortgage ceases to be valid as to creditors of the mortgagor two months after the expiration of the term for which it is given unless the record be renewed by affidavit. There is no allegation of such renewal. This is a material and substantial fact in plaintiff's cause of action, and it is to be presumed would have been alleged if true. The natural presumption would seem to be that the term of the mortgage extended at least to October 19, 1889. This is a case in which two conflicting assumptions may be made from the same allegation. In such case neither can be properly called an intendment or implication of such allegation.

The mortgage vests the legal title in the mortgagee. His right of possession depends upon the terms of the mortgage. Plaintiff does not reveal the terms of his mortgage in his petition. He does not claim the right of possession. I see no reason why it should be forced upon him.

The assumption that the term of plaintiff's mortgage could not be longer than till the maturity of the later note is supposed to be strengthened by Maxwell's form for the foreclosure of chattel mortgages. The form given is for an action on note and mortgage. It gives a copy of the note to secure which the mortgage was given, but no copy of the condition of the mortgage. In forms given by the same author for actions on covenant the covenants are required to be copied, and in several forms for the foreclosure of mortgages of real estate the condition of the mortgage is copied. The omission in the present instance is evidently a mistake. But the mortgage in the case at bar is not alleged to have been given to secure the payment of the notes. In foreclosing chattel mortgages by petition in court no allegation or proof of right of possession in the mortgagee is necessary. In the action for the

conversion of personal property such allegation and proof is necessary.

Since both court and counsel rely on Maxwell's forms as authority, I will give his form for the action for conversion of chattels. It is in the following words:

"First. The plaintiff alleges that on the........day of ........the plaintiff was the owner and in possession (if not in possession entitled to the immediate possession) of the following described goods and chattels (describe them) of the value of $.....

"Second. On the day aforesaid the defendant obtained possession of said goods and chattels and wrongfully and unlawfully converted the same to his own use to the damage of plaintiff in the sum of $.... (Add prayer.)" The citation of Maxwell's forms as sustaining the •petition as for conversion is not a fortunate citation.

The court says that, under the circumstances, "a wrongful sale of the sheep was a tortious conversion as against the plaintiff."

I must say that among all the numerous cases cited by counsel and court I do not find one that goes to the extent of holding that a sale of mortgaged chattels by the mortgagor in possession is, of itself, a conversion as against the mortgagee. To be a conversion all the commentators on chattel mortgages state that the sale must be in exclusion, defiance or denial of the rights of the mortgagee. The mere fact of sale by the mortgagor does not import such exclusion, defiance or denial. What I now propose to show is that no case cited holds that it does. A very few cases contain unguarded expressions, purely dicta, which, taken alone, might be so understood. But taken in connection with the facts to which they were applied, they do not indicate such a view of the law.

The case of Coles v. Clark, 3 Cush., 399, was a sale of mortgaged jewelry at auction and delivery by auctioneer, followed by a demand upon the vendor and his refusal to account for the jewelry, leaving no question as to the denial of plaintiff's right.

The case of Ashmead v. Kellogg, 23 Conn., 70, was an action against the mortgagor of a schooner, who had sold the "entire interest of said vessel" for $14,000.00, which he retained to his own use. And the vessel was sold, as the court says, "as unincumbered." Besides the only purpose for which a schooner.would be valuable or would be sold or purchased would be for use in navigation, which would of itself indicate in the vendor a denial of, or intention to defeat and exclude, the mortgagee's lien.

The case of Spraights v. Hawley, 39 N. Y., 441, was mortgaged jewelry sent from Syracuse to New York City and sold there.

The case of Bank v. Meyer (Ark.) 20 S. W. Rep., 406, is expressly stated by the court to have been a sale in exclusion ·or defiance of the mortgagee's right. One reason for this is apparent from the fact that it was a sale of cotton to a dealer, in effect the cotton was placed upon the market.

Brown v. Campbell Co., 44 Kan., 237, was a case of mortgaged chattels sent to another county and sold.

White v. Phelps, 12 N. H., 282, was a sale of a mortgaged horse and demand made for the horse of a second purchaser, and refusal to produce or account for the horse.

Henderson v. Foy, 11 South., was mortgaged cotton placed in a warehouse and there sold by the mortgagor—evidently a placing of the cotton on the market in defiance of the mortgagee's right.

Millar v. Allen, 10 R. I., 44, is a case decided upon a mortgage which was held by the court to give the mortgagee the right of possession on demand. Demand was made. The court held, very properly, that it was no excuse that the mortgagor had placed it out of his power to deliver the property on demand by remortgaging it and giving possession to the second mortgagee.

These are the principal cases cited as showing that a sale such as is alleged in the case at bar constitute a conversion. It will be observed that in every case something appears in addition to the mere fact of sale to indicate the exclusion, defiance or denial of the mortgagee's right. In no case does

it rest upon the mere fact of sale. And when the courts or commentators mean that a sale is made of mortgaged property as unincumbered, or in exclusion, defiance or denial of a mortgagee's interest, they say so. They do not leave it to be inferred. There is greater reason for a pleader to do so in stating his cause of action. In the case at bar it is the gist of the action as for a conversion. It would materially strengthen the plaintiff's cause in any view. And it is to be presumed if such were the fact he would have stated it. He cannot be accused of falsehood if the sale was actually made in the recorder's office, upon an examination of the mortgage record by all parties concerned or taking part in the sale or purchase, with the mortgage record open before them, read and understood by all, and fully and correctly explained by the mortgagors. But this was unnecessary. The record notice was equivalent to this in the absence of any fraudulent acts or representations preventing an examination of the record. I cannot concur with the court in ignoring the constructive notice of the record imparted by the allegation that the mortgage was in full force and effect. It was certainly sufficient to charge all persons participating in the sale and purchase with knowledge of the mortgage and its contents, and to strengthen the presumption of good faith which attaches to all business transactions, and to negative all suspicion of fraud. Fraud is odious and is not to be presumed. The sale of this property is not alleged to have been fraudulent. No act of the mortgagors is alleged to have been fraudulent.

The courts and text writers, when they speak of a sale of mortgaged chattels, without adding as unincumbered, or in exclusion, defiance or denial of the right of the mortgagee or something equivalent, speak of such sale as subject to the mortgage of course. They do not presume fraud, but the contrary. Jones adheres strictly to the common law as distinguished from the equity view of chattel mortgages. He says at section 454: "Before forfeiture the mortgagor may sell the mortgaged property, subject, of course, to the payment of the mortgage debt. The purchaser takes all the interest the mortgagor had. Such purchaser may again, be-

fore default, sell and deliver the property with the like effect, and the remedy of the mortgagee upon the maturity of the debt is to follow the property and recover of the last purchaser."

It is hardly necessary to remark that this remedy would not be affected by the character of the sale whether in attempted exclusion of the rights of the mortgagee or not, unless the property were moved, separated, destroyed, or in some manner injured.

Jones proceeds:

"Although the mortgage empowers the mortgagee to take possession of the mortgaged property at any time in case he deems himself unsafe, the mortgagor has full authority to sell the property so long as there has been no default and no demand of possession under the safety clause. Until such time a sale by the mortgagor does not amount to a conversion on his part, nor does the purchase amount to a conversion on the part of the purchaser."

So courts and commentators generally in speaking of a sale of mortgaged chattels speak of it as a sale subject to the mortgage of course. When they mean more than this they express such meaning. If the petition in the case at bar means more it should express such meaning.

Jones says at section 461: "The mere fact that mortgaged property was sold by a junior mortgagee for its full value, in the exercise of his legal right to foreclose his mortgage and sell his interest in the property, is not sufficient to make such sale hostile to the prior rights of the mortgagee; especially if it appear that the property was not sold in parcels and was not scattered or dissipated. Such a rule is not inconsistent with the right of the prior mortgagee to enforce his lien, although it may indicate that the purchaser intends to contest it."

In the case at bar the court holds the defendant accountable for the sale effected by the mortgagors of the property theretofore unsold, when he would not have been accountable if he had himself seized and sold the entire property for full value. "Fraus est odiosa et non præsumanda."

I feel that I have indulged in a discussion of the law of pleading and of chattel mortgages in points bearing but remotely upon the decision of this case and not necessary to the decision. The law upon these subjects is in an unsettled and formative state. The opinion of the court has a tendency to settle the law in this State. I could not consent, by silence upon these important points, to appear to concur in views of the law in which I do not concur.

This action as an action for an accounting under a constructive trust must fail: the proposition upon which it is founded that in case of a sale of mortgaged chattels by the mortgagor the lien follows the proceeds into the hands of third persons to whom they have been paid by the mortgagors not being correct as a general proposition, and the case made by the petition not being exceptional.

The several other causes of action, which this petition is supposed to have concealed about it, are all legal in their nature as distinguished from equitable. They are all founded upon the idea that plaintiff by virtue of his mortgage from Lawrence & McGibbon, acquired as by purchase a property interest in certain sheep and that his property interest in the sheep was afterwards re-sold by Lawrence & McGibbon at the request and instigation of the defendant. This is expressly negatived by the petition itself which only alleges a sale of what was theretofore unsold. This settles the question of a conversion of plaintiff's property. This settles the question of the fiction of money had and received by defendant to plaintiff's use. This settles the question of money in defendant's possession which in equity and good conscience he ought to pay over to plaintiff unless for an impairment of plaintiff's security. To sustain any of these causes of action we must not only supply essential allegations by construction, we must not only disregard the express language of the petition, but we must positively presume the commission of a fraud and a felony.

There remains to consider only a possible cause of action for the impairment of plaintiff's security, and no impairment is in any manner alleged or shown.

The court says of the petition that it sets forth an actionable wrong on the part of the defendant for which he should answer, and that it would be a travesty upon justice to say that plaintiff should go out of court without redress, or without even calling upon defendant to answer these allegations. With all deference I must say that it seems clear that the allegations of the petition show no actionable wrong, and that they do not call for an answer. As to the matter of going out of court it is better for the plaintiff to go out of court now than after trial.

I am of the opinion that the judgment of the district court should be affirmed.